1 | AMIN WASSERMAN GURNANI, LLP
2 | William P. Cole, Bar No. 186772
Matthew R. Orr, Bar No. 211097
3 | Richard L. Hyde, Bar No. 286023
4 | 515 South Flower St., 18th Floor
Los Angeles, CA  90071
5 | Tel:   (213) 933-2330
6 | Fax:   (312) 884-7352
wcole@awglaw.com
7 | morr@awglaw.com
8 | rhyde@awglaw.com

9 | Attorney for Defendant Walmart Inc.,
10 | erroneously sued as Walmart, Inc.

11

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| Jaime Guzman, individually and on behalf of all other similarly situated, | State Case No.:  24CV068489 |
| --- | --- |
| Plaintiff, | **DEFENDANT WALMART INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1332(d)** |
| v. | |
| Walmart, Inc. | |
| Defendant. | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant Walmart, Inc. erroneously sued as Walmart Inc. ("Defendant"), hereby removes this action from the Superior Court for the State of California for the County of Alameda to the United States District Court for the

DEFENDANT WALMART INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28
U.S.C. § 1332(d)

Northern District of California, pursuant to 28 U.S.C. § 1332(a) and (d), § 1453, § 1441, and § 1446. Defendant hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a).

### STATEMENT OF THE CASE AND TIMELINESS OF REMOVAL

1.     On March 20, 2024, Plaintiff Jaime Guzman ("Plaintiff") commenced an action against Defendant in the Superior Court of the State of California for the County of Alameda, Case Number 24CV068489, by filing a Complaint entitled "Jaime Guzman, individually and on behalf of all others similarly situated v. Walmart, Inc." A true and correct copy of the Complaint, Summons, Superior Court Civil Cover Sheet, and Cover Sheet Addendum are attached hereto as Exhibit 1.

2.     In the Complaint, Plaintiff alleges that Defendant mislabels and fails to disclose and/or adequately warn consumers about alleged lead content in its Equate Daily Fiber Orange Smooth product (the "Product"). (*See* Complaint ("Compl."), ¶¶ 1-4). Plaintiff seeks, among other things, to certify a putative class that purports to include "[a]ll persons who purchased the Product for personal use in California within the applicable statute of limitations until the date class notice is disseminated." (*Id.* ¶ 40).

3.     The Complaint purports to allege causes of action against Defendant for supposed violations of California Civil Code §§ 1750 et seq (the Consumers Legal Remedies Act ("CLRA")), California Business and Professions Code §§ 17200 (the Unfair Competition Law ("UCL")), and for breach of implied warranties.

4.     On March 20, 2024, the court issued a Notice of Case Management Conference reflecting a Complex Determination Hearing set for April 19, 2024, and an Initial Case Management Conference set for July 18, 2024. On that same day, the case was also assigned to the Hon. Tara Desautels of the Superior Court of the State of California for the County of Alameda. Plaintiff filed a Proof of Personal Service as to Defendant on March 22, 2024. On March 27, 2024, the case was re-assigned to the Hon. Michael Markman. True and correct copies of the Notice of Case Management

1    Conference, Proof of Personal Service, and Notice of Case Reassignment are attached
2    hereto as <u>Exhibit 2</u>.

3           5.    On April 4, 2024, Plaintiff filed a peremptory challenge to Judge Desautels
4    pursuant to Code of Civ. Proc. § 170.6. The challenge was denied on April 12, 2024. On
5    April 5, 2024, the case was deemed complex and formally re-assigned again to Judge
6    Markman and the hearing scheduled for April 19 was vacated. An Initial Case
7    Management Order was also entered on April 5, 2024. True and correct copies of the
8    Peremptory Challenge, Notice of Case Reassignment, Initial Case Management Order,
9    and Minute Order (Complex Determination) are attached hereto as <u>Exhibit 3</u>.

10          6.    On April 12, 2024, Plaintiff filed a second Proof of Personal Service as to
11   Defendant. A true and correct copy of this Proof is attached hereto as <u>Exhibit 4</u>.

12          7.    A true and correct copy of the register of actions from Alameda County
13   Superior Court as of April 17, 2024, is attached hereto as <u>Exhibit 5</u>.

14          8.    This removal is timely as required by 28 U.S.C. § 1446(b) as it is brought
15   within thirty (30) days of March 21, 2024, the date service of the Complaint was
16   purportedly effectuated on Defendant.

17                      **<u>SUBJECT MATTER JURISDICTION</u>**

18          9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1332,
19   1441, and 1453. This Court specifically has jurisdiction under the Class Action Fairness
20   Act of 2005 ("CAFA"), codified in part at 28 U.S.C. §§ 1332(d)(2) and 1453(b), because
21   it is a civil action styled as a class action in which: (1) the number of members of the
22   proposed plaintiff class is not less than one hundred, in the aggregate; (2) the matter in
23   controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; and
24   (3) any member of the class of plaintiffs is a citizen of a State different from any
25   defendant. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B) and (d)(6)
26   / / /
27
28   / / /

DEFENDANT WALMART INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28
U.S.C. § 1332(d)

**PLAINTIFF'S CLASS IS STYLED AS A PUTATIVE CLASS ACTION**
**WITH A PROPOSED CLASS OF NOT LESS THAN 100 MEMBERS**

10.    The Court has CAFA jurisdiction because this lawsuit is a putative class action, and the proposed class comprises more than 100 individuals. (Compl., ¶ 44).

11.    CAFA jurisdiction exists over any "class action" brought under any "State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representatives as a class action[.]" 28 U.S.C. § 1332(d)(1)(B). This case constitutes a "class action" for purposes of removal because Plaintiff styles his complaint as a "Class Action." (Compl., caption). Plaintiff alleges "[t]he members of the class are so numerous that joinder of all members is impracticable." (*Id.* ¶ 44). This action therefore qualifies as a class action under CAFA.

12.    CAFA jurisdiction exists unless "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B). CAFA defines class members as "the persons named or unnamed who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(B). This requirement is met here because Plaintiff alleges that the purported class consists of "thousands of persons." (Compl., ¶ 44). Therefore, on the face of the pleadings there are more than 100 members in Plaintiff's proposed class.

**THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION**

13.    Under CAFA, "the claims of individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6).

14.    Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the amount in controversy requirement under CAFA should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43

("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case… Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly….").

13.    Because Plaintiff has not expressly pled a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). In *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547, 554 (2014), the United States Supreme Court held that where a plaintiff's complaint is silent as to whether the amount in controversy is less than CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc*., 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) (quoting Dart, 135 S. Ct. at 554). On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

14.    "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806,

807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Defendant may assume a recovery rate of 100% in calculating the amount in controversy. *See, e.g., Ritenour v. Carrington Mortgage Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017).

15.    In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 414-15 (9th Cir. 2018), the Ninth Circuit held that "the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." The Court may consider "allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." *Id*. at 416. The amount in controversy may include "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Id*. (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)). "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)).

16.    As discussed above, Plaintiff brings this action on behalf of a purported class of consumers consisting of a class of all California purchasers who purchased the Product within four years prior to the filing of the Complaint. (Compl., ¶ 40). Plaintiff alleges claims for relief under the CLRA, UCL, and for breach of implied warranties. Under those claims, Plaintiff seeks damages, punitive damages, injunctive relief, restitution, disgorgement of the full purchase price of the Products, "attorneys' fees and litigation costs," and "pre- and post-judgment interest." (Compl., ¶¶ 33, 45, 74, 82, 83, prayer for relief).

15.    Actions under the UCL generally only allow for the remedies of restitution and injunctive relief. *Pfizer Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 631, 105 Cal. Rptr.

3d 795 (2010). "An order for restitution is an order 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken'…" *Spintouch, Inc. v. Outform, Inc.*, No. SA CV 21-00840-DOC-ADS, 2021 U.S. Dist. LEXIS 246060, at *23 (C.D. Cal. Nov. 8, 2021) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)). The CLRA additionally allows plaintiffs to recover actual and punitive damages, as well as attorneys' fees, to a prevailing plaintiff. Cal. Civ. Code §§ 1780(a)(1), (a)(4), (e).

16.    Plaintiff's Complaint fails to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis. As such, Defendant provides calculations only to demonstrate that the amount in controversy in this case exceeds the jurisdictional amount under CAFA jurisdiction. Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test that should be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

17.    Disgorging the full purchase price to all putative class members during a four-year class period alone exceeds the $5,000,000 jurisdictional minimum.

18.    Therefore, although Defendant denies Plaintiff's allegations of liability, injury, and damages and will oppose certification of the putative class, taking Plaintiff's allegations as true, this is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs[.]" 28 U.S.C. § 1332(d)(2). Defendant has a good-faith belief that the damages, restitution, injunctive relief and attorneys' fees claimed by Plaintiff for treatment on a class basis for all consumers in California for the alleged four-year class period would easily exceed $5,000,000, provided such remedies were granted in full as demanded in the Complaint.

## CLASS MEMBERS ARE CITIZENS OF DIFFERENT STATES

19.    CAFA jurisdiction is met where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). That requirement is met here. Defendant is a Delaware corporation with its principal place of business located in Arkansas. (Compl., ¶ 8). Plaintiff seeks to certify a class of persons who purchased the Product in California for personal use, i.e., "[a]ll persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated." (Compl., ¶ 40). Thus, at least one putative class member is diverse from Defendant, and there is minimal diversity under 28 U.S.C. § 1332(d)(2)(A).

## EXCEPTIONS TO REMOVAL DO NOT APPLY

20.    This action does not fall within any exclusions to removal jurisdiction recognized by 28 U.S.C. § 1332(d)(3), (4), (9) or 28 U.S.C. § 1453(d).

21.    In addition, this action does not fall within any of the other categorical exceptions under CAFA. *See* 28 U.S.C. § 1332(d)(9)(A), (B), and (C) (making exceptions for an action (1) "concerning a covered security"; (2) that relates to the internal affairs or governance of a corporation or other form of business enterprise"; (3) "that relates to the rights, duties (including fiduciary duties), and obligations related to or created by or pursuant to any security…"); see also 28 U.S.C. § 1453(d) (same exceptions).

## ALL PROCEDURAL REQUISITES ARE SATISFIED

22.    28 U.S.C. § 1441(a) allows civil actions brought in state to be removed to the district court "embracing the place where such action is pending." The Complaint was filed and currently is pending in the Superior Court of the State of California for the County of Alameda. This District is the proper venue for this action upon removal pursuant to 28 U.S.C. § 1441(a) because it is the District that embraces the county where the state court action was pending.

23.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders are attached hereto as Exhibits 1, 2, 3, 4, and 5.

DEFENDANT WALMART INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 1332(d)

24.     Defendant will promptly serve a notice of filing of removal, with a copy of the Notice of Removal annexed thereto, onto Plaintiff's attorney and will file such notice with the Clerk of the Superior Court of the State of California for the County of Alameda.

### CONCLUSION AND DEMAND FOR JURY TRIAL

25.     For the foregoing reasons, Defendant hereby removes this case from the Superior Court of the State of California for the County of Alameda to this United States District Court for the Northern District of California.

26.     Defendant hereby demands a jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues subject to a jury trial raised in Plaintiff's Complaint.

Dated:  April 19, 2024                 **AMIN TALATI WASSERMAN, LLP**


                                       **/s/ *Richard L. Hyde*_____**
                                       Richard L. Hyde


                                       *Attorney for Defendant*

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| |
|---|
| **FOR COURT USE ONLY** |
| **(SOLO PARA USO DE LA CORTE)** |

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
03/20/2024
Chad Finke, Executive Officer / Clerk of the Court
By:          D. Franklin          Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WALMART, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JAIMÉ GUZMÁN individually, and onbehalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court for the State of California

for the County of Alameda - Hayward Hall of Justice, 24405 Amador Street, Hayward, Ca 94544

| CASE NUMBER: |
|---|
| *(Número del Caso):* |
| 24CV068489 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mike T. Houchin, Esq., Crosner Legal PC, 9440 Santa Monica Blvd., Suite 301, Beverly Hills, Ca 90210 Ph (866) 276-7637

DATE:          03/20/2024          Chad Finke, Executive Officer / Clerk of the Court          Clerk, by          D. Franklin          , Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]          [ Clear this form ]

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Michael T. Houchin (SBN 305541), Craig W. Straub (SBN 249032)<br>Crosner Legal PC, 9440 Santa Monica Blvd. , Sute 301, Beverly Hills, Ca 90210 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>03/20/2024 at 03:24:39 PM<br>By: Damaree Franklin,<br>Deputy Clerk |
| TELEPHONE NO.: (866) 276-7637     FAX NO.: (310) 510-6429 | |
| EMAIL ADDRESS: mhouchin@crosnerlegal.com | |
| ATTORNEY FOR *(Name)*:  Jaime Guzman | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME:
Jaime Guzman, et al. v. Walmart Inc.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | | CASE NUMBER: |
|---|---|---|---|---|
| [x] Unlimited<br>(Amount<br>demanded<br>exceeds $35,000) | [ ] Limited<br>(Amount<br>demanded is<br>$35,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 24CV068489 |
| | | | | JUDGE: |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [x] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:

a. [x] Large number of separately represented parties
b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [x] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*: 3
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: 03/20/2024

Michael T. Houchin                                        ▶ Michael Houchin
_____                  _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only. **Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or*
    *toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil*
    *harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer*
      *or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally*
    *complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
    *drugs, check this item; otherwise,*
    *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
      Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex*
    *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic*
      *relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-*
      *harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

| Print this form | Save this form | | Clear this form |

F. ADDENDUM TO CIVIL CASE COVER SHEET

*United States of the Superior Court of California, County of Alameda*

| Short Title: Guzman et al. v. Walmart Inc. | Case Number: 24CV068489 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW UNLIMITED CIVIL CASE FILINGS IN THE**
**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
03/20/2024 at 03:24:39 PM
By: Damaree Franklin,
Deputy Clerk

[ ] Oakland, Rene C. Davidson Alameda County Courthouse (446)          [X] Hayward Hall of Justice (447)
[ ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) |
|---|---|---|
| Auto Tort | Auto tort (22) | [ ] 34 Auto tort (G)<br>**Is this an uninsured motorist case? [ ] yes [ ] no** |
| Other PI /PD / WD Tort | Asbestos (04) | [ ] 75 Asbestos (D) |
| | Product liability (24) | [ ] 89 Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [ ] 97 Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [ ] 33 Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [ ] 79 Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [ ] 80 Civil rights (G) |
| | Defamation (13) | [ ] 84 Defamation (G) |
| | Fraud (16) | [X] 24 Fraud (G) |
| | Intellectual property (19) | [ ] 87 Intellectual property (G) |
| | Professional negligence (25) | [ ] 59 Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [ ] 03 Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [ ] 38 Wrongful termination (G) |
| | Other employment (15) | [ ] 85 Other employment (G) |
| | | [ ] 53 Labor comm award confirmation |
| | | [ ] 54 Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | [ ] 04 Breach contract / Wrnty (G) |
| | Collections (09) | [ ] 81 Collections (G) |
| | Insurance coverage (18) | [ ] 86 Ins. coverage - non-complex (G) |
| | Other contract (37) | [ ] 98 Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [ ] 18 Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [ ] 17 Wrongful eviction (G) |
| | Other real property (26) | [ ] 36 Other real property (G) |
| Unlawful Detainer | Commercial (31) | [ ] 94 Unlawful Detainer - commercial **Is the deft. in possession** |
| | Residential (32) | [ ] 47 Unlawful Detainer - residential **of the property?** |
| | Drugs (38) | [ ] 21 Unlawful detainer - drugs **[ ] Yes [ ] No** |
| Judicial Review | Asset forfeiture (05) | [ ] 41 Asset forfeiture |
| | Petition re: arbitration award (11) | [ ] 62 Pet. re: arbitration award |
| | Writ of Mandate (02) | [ ] 49 Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq) [ ] Yes [ ] No** |
| | Other judicial review (39) | [ ] 64 Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [ ] 77 Antitrust / Trade regulation |
| | Construction defect (10) | [ ] 82 Construction defect |
| | Claims involving mass tort (40) | [ ] 78 Claims involving mass tort |
| | Securities litigation (28) | [ ] 91 Securities litigation |
| | Toxic tort / Environmental (30) | [ ] 93 Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [ ] 95 Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [ ] 19 Enforcement of judgment |
| | | [ ] 08 Confession of judgment |
| Misc Complaint | RICO (27) | [ ] 90 RICO (G) |
| | Partnership / Corp. governance (21) | [ ] 88 Partnership / Corp. governance (G) |
| | Other complaint (42) | [ ] 68 All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [ ] 06 Change of name |
| | | [ ] 69 Other petition |

202-19 (5/1/00)                                                                                     A-13

# EXHIBIT 1

1  CROSNER LEGAL, P.C.
   Michael T. Houchin (SBN 305541)
2  mhouchin@crosnerlegal.com
   Craig W. Straub (SBN 249032)
3  craig@crosnerlegal.com
   Zachary M. Crosner (SBN 272295)
4  zach@crosnerlegal.com
   9440 Santa Monica Blvd. Suite 301
5  Beverly Hills, CA 90210
   Tel: (866) 276-7637
6  Fax: (310) 510-6429
   *Attorneys for Plaintiff and the Proposed Class*
7

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                     FOR THE COUNTY OF ALAMEDA

11  JAIMÉ GUZMÁN individually, and on      Case No.  24CV068489
    behalf of all others similarly situated,
12                                          **CLASS ACTION COMPLAINT FOR:**
                 Plaintiff,
13                                             1.  Violations of the Consumers Legal
         v.                                        Remedies Act, Cal. Civ. Code §§ 1750,
14                                                 *et seq.*;
    WALMART, INC.,
15                                             2.  Violations of the Unfair Competition
                 Defendant.                        Law, Cal. Bus. & Prof. Code §§17200,
16                                                 *et seq.*; and
17                                             3.  Breach of Implied Warranties.
18
19                                          **JURY TRIAL DEMANDED**
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INTRODUCTION

1.      Defendant Walmart, Inc. ("Defendant" or "Walmart") sells the Equate Daily Fiber Orange Smooth Product (the "Product"). Defendant represents that the Product is healthy and made with "100% Natural Psyllium Husk." Specifically, Defendant includes the following statements on the label of the Product: "Multi-Health Daily Fiber Supplement," "Helps maintain **healthy blood sugar** levels as part of your diet," "Helps **lower cholesterol** to promote heart health," and "Promotes **digestive health**."

2.      Unfortunately, Defendant misleads consumers about the health benefits and quality of the Product and fails to disclose that the Product contains unsafe and unlawful levels of lead— a known human carcinogen that is linked to a myriad of health issues.

3.      On February 29, 2024, the website ConsumerLabs.com published results of testing performed on various fiber products containing psyllium husk. Those test results revealed that the Equate Daily Fiber Product tested positive for 6.5 micrograms of lead per serving.[1] In California, products that test positive for more than .5 micrograms of lead per serving must display a Proposition 65 warning label.[2] Taking the maximum suggested maximum of six servings of the Product would expose a person to 38.7 micrograms of lead in a single day, which far exceeds the Food and Drug Administration's ("FDA") maximum daily intake level of 12.5 micrograms per day.[3] Defendant fails to disclose the high levels of lead in the Product thereby deceiving consumers.

4.      Plaintiff Jaimé Guzmán ("Plaintiff") now brings this action seeking redress for Defendant's false adverting and deceptive conduct.

---

[1] Tod Cooperman, *Psyllium Fiber Supplements Review,* CONSUMERLABS.COM, *available at* https://www.consumerlab.com/reviews/psyllium-supplements/psyllium/ attached hereto as **Exhibit A**.

[2] *Id*; *see also Lead and Lead Compounds*, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH AND HAZZARD ASSESSMENT, *available at* https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds

[3] *Id.*

1

CROSNER LEGAL, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

6.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Product in California, specifically in this county. The marketing of the Product, including the decision of what to include and not include on the label, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Product to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Product in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

7.      Venue is proper in this county pursuant to Cal. Civ Code. § 1780(c) because Defendant is doing business in this county as the Product is offered for sale in this county.

**PARTIES**

8.      Defendant Walmart, Inc. is a Delaware corporation that maintains its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716. Throughout the Class Period defined herein, Defendant was the distributor and seller of the Product.

9.      Plaintiff Jaimé Guzmán is a resident of California. Plaintiff purchased the Product during the class period. Plaintiff relied on Defendant's deceptive labeling claims as set forth below.

2

CROSNER LEGAL, P.C.

<u>FACTUAL ALLEGATIONS</u>

**THE LABEL OF THE PRODUCT LEADS REASONABLE CONSUMERS TO BELIEVE THAT THE**

**PRODUCT IS HEALTHY AND MADE WITH NON-TOXIC INGREDIENTS**

10.     The label for the product gives reasonable consumers the impression that the Product is healthy and made with quality ingredients and do not contain unlawful levels of lead. For example, the label of the Product states: "100% Natural Psyllium Husk," "Multi-Health Daily Fiber Supplement," "Helps maintain **healthy blood sugar** levels as part of your diet," "Helps **lower cholesterol** to promote heart health," and "Promotes **digestive health**." The net-effect or net-impression of the Product's labeling on consumers is that the Product is healthy and does not contain any potentially harmful ingredients like high levels of lead. The label of the Product is shown below:



CLASS ACTION COMPLAINT

CROSNER LEGAL. P.C.

## TESTING REVEALS THAT THE PRODUCT CONTAINS HIGH LEVELS OF LEAD

11.   On February 29, 2024, the website ConsumerLabs.com published results of testing performed on various fiber products that contain psyllium husk as an ingredient.[4] Psyllium husk supplements are used to aid in digestive health by occupying volume and slowing digestion, which leads to a fullness and helping to regulate blood sugar levels. In addition, psyllium husk supplements provide a laxative effective.[5]

12.   The ConsumerLab test results revealed that the Product tested positive for 6.5 micrograms of lead per serving. Taking the maximum suggested maximum of six servings of the Product would expose a person to 38.7 micrograms of lead in a single day, which far exceeds the FDA's maximum daily intake level of 12.5 micrograms per day.[6]

13.   ConsumerLab classified the Product as "not approved" because it contains high levels of lead that exceed .5 micrograms per serving.

14.   ConsumerLab utilized .5 micrograms of lead per suggested serving size as the benchmark for whether a product would be approved. This number was chosen because California law provides that .5 micrograms per day of lead is the maximum allowable daily value of lead exposure by oral route pursuant to California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5, *et seq.*[7] In other words, a food product that exceeds the .5 micrograms maximum allowable daily value of lead must be labeled as a known carcinogen in accordance with Proposition 65. Despite testing much higher than .5 micrograms of lead per suggested the serving, the Product is not labeled as a known carcinogen in accordance with Proposition 65.

---

[4] Tod Cooperman, *Psyllium Fiber Supplements Review,* CONSUMERLABS.COM, *available at* https://www.consumerlab.com/reviews/psyllium-supplements/psyllium/ attached hereto as **Exhibit A**.

[5] *Id.*

[6] *Id.*

[7] *See Lead and Lead Compounds*, CALIFORNIA OFFICE OF ENVIRONMENTAL HEALTH AND HAZZARD ASSESSMENT, available at https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds

15. Below is a screenshot of the ConsumerLab test results.

16. The Product also had much higher levels of lead than competing psyllium husk supplements, including Organic India, Viva Naturals, and Yerba Prima as shown below:

CROSNER LEGAL, P.C.



**EXPOSURE TO LEAD IS HARMFUL TO HUMAN HEALTH**

17.     "Lead is a poisonous metal that can cause long-term health and behavioral problems."[8] Significantly, "[t]here is no safe level of lead" and "[e]xposure to lead can cause serious health problems for everyone."[9]

18.     According to the Centers for Disease Control and Prevention ("CDC"), lead exposure can cause damage to the brain and nervous system and slowed growth and development in children.[10] "Lead exposure can cause high blood pressure and brain, kidney and reproductive health issues in adults. Symptoms of lead poisoning include headaches, stomach cramps, constipation, muscle/joint pain, trouble sleeping, fatigue, irritability, and loss of sex drive."[11]

19.     According to the U.S. Environmental Protection Agency ("EPA"), "[l]ead is known to cause a range of health effects, from behavioral problems and learning disabilities, to seizures and death."[12] The Department of Health and Human Services ("HHS") "has determined that lead and lead compounds are reasonably anticipated to be human carcinogens" and the EPA "has classified lead as a probable human carcinogen."[13]

---

[8] *Lead in Well Water Systems*, MINNESOTA DEPARTMENT OF HEALTH, *available at* https://www.health.state.mn.us/communities/environment/water/wells/waterquality/lead.html

[9] *Id.*

[10] *Health Effects of Lead Exposure*, CENTERS FOR DISEASE CONTROL AND PREVENTION, *available at* https://www.cdc.gov/nceh/lead/prevention/health-effects.htm

[11] *Adults and Lead Poisoning*, NEW YORK CITY DEPARTMENT OF HEALTH, *available at* https://www.nyc.gov/site/doh/health/health-topics/lead-poisoning-adults-and-lead-poisoning.page#:~:text=Lead%20exposure%20can%20cause%20high,t%20look%20or%20feel%20sick.

[12] *What are some of the health effects of lead?*, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *available at* https://www.epa.gov/lead/what-are-some-health-effects-lead

[13] *ToxFAQs for Lead*, AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY, *available at* https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=93&toxid=22#:~:text=The%20Department%20of%20Health%20and,as%20a%20probable%20human%20carcinogen.

20.     Because lead is a cancer-causing agent, California has placed lead on the Proposition 65 list. According to the Proposition 65 website, "[l]ead is on the Proposition 65 list because it can cause birth defects or other reproductive harm.  Exposure to lead during pregnancy can affect brain development and cause learning and behavior problems for the child. Exposure to lead can harm the reproductive systems of men and women."[14] "Lead and lead compounds also are on the Proposition 65 list because they can cause cancer.  Exposure to lead and lead compounds may increase cancer risk."[15]

21.     The California Office of Environmental Health Hazard Assessment ("OEHHA") has released a comprehensive technical support document on lead titled *Public Health Goals for Chemicals in Drinking Water- Lead.*[16] This document cites to several animal and human studies finding the consumption of lead leads to developmental and reproductive toxicity.

22.     The OEHHA document on lead also cites to several published scientific studies showing that consumption of lead "has been associated with a large variety of human toxicological effects. Lead is known to cause changes in the cardiovascular, hematological, musculoskeletal, renal, reproductive, neurological, and immunological systems. In addition, lead may cause an increased risk of lung and stomach cancer."[17] Exposure to even low levels of lead "can, over time, damage the heart, kidneys, and brain."[18]

---

[14] *Lead and Lead Compounds,* PROPOSITION 65- YOUR RIGHT TO KNOW!, *available at* https://www.p65warnings.ca.gov/fact-sheets/lead-and-lead-compounds

[15] *Id.*

[16] *Public Health Goals for Chemicals in Drinking Water- Lead,* OFFICE OF ENVIRONMENTAL HEALTH HAZARD ASSESSMENT, *available at* https://oehha.ca.gov/media/downloads/water/chemicals/phg/leadfinalphg042409.pdf

[17] *Id.*

[18] Spivey A., *The weight of lead. Effects add up in adults.* ENVIRON HEALTH PERSPECT (Jan. 2017), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1797860/

CROSNER LEGAL, P.C.

23.     Lead exposure also causes digestive health issues. It can "cause gastrointestinal (GI) problems (e.g., abdominal pain, constipation, and diarrhea) ..."[19] This is in direct contradiction with the Product's "promotes digestion health" labeling.

24.     Lead exposure is also known "to be a cause of hypertension and a risk factor for heart disease, stroke, and chronic kidney disease."[20] This is in direct contradiction with the Product's "promote heart health" labeling.

### PLAINTIFF'S EXPERIENCE

25.     Plaintiff Jaimé Guzmán purchased the Product during the class period from a Walmart store located in California. Plaintiff Guzmán was not aware of the high levels of lead in the Product. After reading the label, Plaintiff Guzmán purchased the Product on the assumption that the labeling was accurate, and that the Product did not contain harmful substances like lead. Plaintiff saw and relied on the following labeling statements "100% Natural Psyllium Husk," "Multi-Health Daily Fiber Supplement," "Helps maintain healthy blood sugar levels as part of your diet," "Helps lower cholesterol to promote heart health," and "Promotes digestive health." The label statements created the net impression that the Product is healthy and does not contain harmful ingredients like high levels of lead. Plaintiff would not have purchased the Product had he known the Product contains high levels of lead, a substance which is known to be hazardous to human health including digestive and heart health. As a result, Plaintiff suffered in fact when he spent money to purchase the Product he would not have purchased absent Defendant's misconduct. Plaintiff is not bringing a personal injury claim.

26.     Plaintiff continues to see the Product for sale at retail stores in California and desires to purchase the Product again if the Product did not contain high levels of lead. However,

---

[19] Safaee M, Malekzadeh M, Motamedi N, Sayadishahraki M, Eizadi-Mood N. *Gastrointestinal Manifestations of Lead Poisoning: A Brief Report.* IRAN J MED SCI., 1;48(6):600-605 (Nov. 1, 2023) *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10715114

[20] Philip J. Landrigan. *Lead and the heart: an ancient metal's contribution to modern disease.* THE LANCET (Mar. 12, 2028) *available at* https://www.thelancet.com/journals/lanpub/article/PIIS2468-2667(18)30043-4/fulltext

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1    as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiff is unable

2    to rely on the Product's labeling when deciding in the future whether to purchase the Product.

3          27.     Plaintiff did not notice any disclaimer, qualifier, or other explanatory statement

4    or information on the Product's labeling or packaging that disclosed that the Product contained

5    high levels of lead. At the time of Plaintiff's purchases, he did not know the Product contained

6    high levels of lead.

7    **REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S MISREPRESENTATIONS AND**

8    **OMISSIONS**

9          28.     Consumers, like Plaintiff, relied on Defendant's labeling statements set forth

10   above, including the statements: "100% Natural Psyllium Husk," "Multi-Health Daily Fiber

11   Supplement," "Helps maintain healthy blood sugar levels as part of your diet," "Helps lower

12   cholesterol to promote heart health," and "Promotes digestive health." The net-effect or net-

13   impression of the Product's labeling on consumers is that the Product does not contain harmful

14   ingredients like high levels of lead and certainly do not contain unlawful levels of harmful

15   ingredients like lead.

16         29.     Consumers, like Plaintiff, want to know if a product they eat contains substances

17   which are hazardous to their health. Consumers, like Plaintiff, want to know if a product they

18   eat contains high levels of substances which are declared to be unlawful carcinogens by the State

19   of California. Defendant's nondisclosure of the high levels of lead in the Product is material

20   because reasonable consumers would deem the presence of lead in the Product to be important

21   in determining whether to purchase the Product. Defendant has exclusive knowledge that the

22   Product contains high levels of lead. The fact that Defendant's Product contains lead is not

23   reasonably accessible to Plaintiff and consumers. Consumers, like Plaintiff, trust that the food

24   and supplement products they purchase do not contain toxic heavy metals like lead which has

25   been intentionally or negligently added to the Product. Consumers, like Plaintiff, trust that the

26   food products they purchase do not contain toxic heavy metals at unlawful levels. Defendant has

27   a duty to disclose the presence of lead in the Product because the fact is known to Defendant

28   (that the Product contains lead), and the failure to disclose the lead in the Product is misleading.

CROSNER LEGAL, P.C.

1   The high levels of dangerous substances such as lead in the Product implicates a health concern

2   that is important to reasonable consumers when deciding to purchase Defendant's Product.

3   Defendant has actively concealed the high levels of lead in the Product from Plaintiff and

4   putative class members.

5       30.    A failure to disclose a fact constitutes actionable conduct if the omission goes to

6   the central function of the product. Here, the Product's central function is for people to safely

7   consume the Product. A supplement that contains harmful lead in extremely high levels does not

8   serve its central function. Reasonable consumers, like Plaintiff, would deem it important in

9   determining whether to purchase the Product because Plaintiff would not have purchased the

10  Product had he known that harmful chemicals like lead were in the Product. That is, the omission

11  of the lead content of the Product was material because a reasonable consumer would deem it

12  important in determining how to act in the transaction at issue.

13      31.    A failure to disclose a fact constitutes actionable conduct if the omission causes

14  an unreasonable safety hazard. Here, it is not reasonable to sell a product that consumers eat for

15  positive health benefits with illegally high levels of lead that can cause negative health

16  consequences. As explained above, lead is a safety hazard because it causes several negative

17  health effects in humans including developmental, reproductive, digestion, and heart health

18  problems and an increased risk of certain cancers.

19      32.    Defendant also made partial representations that the Product is safe and healthy,

20  including "100% Natural Psyllium Husk," "Multi-Health Daily Fiber Supplement," "Helps

21  maintain healthy blood sugar levels as part of your diet," "Helps lower cholesterol to promote

22  heart health," and "Promotes digestive health" which create the net-impression that the Product

23  did not contain potentially harmful ingredients like lead. These partial disclosures are misleading

24  because the lead content of the Product was not disclosed.

25      **PLAINTIFF AND THE PUTATIVE CLASS MEMBERS SUFFERED ECONOMIC INJURY**

26      33.    Plaintiff and putative class members suffered economic injury as a result of

27  Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's

28  actions, they would not have spent. With all the other psyllium husk products on the market

without high levels of lead, a reasonable consumer would choose to purchase a product without high levels of lead and not Defendant's Product. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Product that was defective, not merchantable, and not fit for its represented purpose. Consumers, including Plaintiff, would not have purchased Defendant's Product if they had known the Product contains high levels of lead, a substance which has known adverse health effects on humans. Defendant did not disclose that the Product contains high levels of lead although it was required to do so in accordance with California's Proposition 65.

34. Making matters worse, psyllium husk products made by Defendant's competitors, such as Organic India, Viva Naturals, and Yerba Prima, and many other popular brands, do not contain high levels of lead. Thus, there are safer alternatives that Plaintiff and class members would have purchased but were denied the benefit-of-the bargain as a result of Defendant's concealment of the high levels of lead in the Product. Because lead is a hazard to human health, Defendant has a continuing duty to disclose the presence of high levels of lead in the Product to consumers. Defendant has failed to adequately disclose that the Product contains high levels of lead. Defendant's Product contains a hidden defect and Plaintiff and putative class members suffered economic injury. Had Plaintiff and putative class members known about the high levels of lead, they would not have purchased the Product or would have paid less for the Product.

35. Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Product. As a consequence of Defendant's deceptive labeling and material omissions, Plaintiff alleges Defendant has violated and is violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") and constitutes a breach of implied warranties.

**NO ADEQUATE REMEDY AT LAW**

36.     Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Product more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

37.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Product, across a multitude of media platforms, including the Product labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). This is especially important here because Plaintiff alleges Defendant has committed "unlawful" acts and brings a claim for violation of the UCL's "unlawful prong." Specifically, Defendant has violated California's Safe Drinking Water and Toxic Enforcement Act of 1986, Cal. Health & Safety Code § 25249.5, *et seq.* No other causes of actions allow this claim to proceed, and thus, there is no adequate remedy at law for this specific violation of the UCL's unlawful prong. Plaintiff's UCL unlawful prong claim does not rest on the same conduct as his other causes of action, and there is no adequate remedy at law for this specific unlawful claim. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

38.     Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to omit material facts about the Product. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1    Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold

2    products is necessary to dispel the public misperception about the Product that has resulted from

3    years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would

4    include, but are not limited to, publicly disseminated statements that the Product contains high

5    levels of lead; and/or requiring prominent qualifications and/or disclaimers on the Product's

6    front label concerning the Product's true nature. An injunction requiring affirmative disclosures

7    to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is

8    also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is

9    currently unable to accurately quantify the damages caused by Defendant's future harm, because

10    discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief

11    necessary. Further, because a public injunction is available under the UCL, and damages will

12    not adequately benefit the general public in a manner equivalent to an injunction.

13        39.    It is premature to determine whether an adequate remedy at law exists. This is an

14    initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has

15    been certified yet. No expert discovery has commenced and/or completed. The completion of

16    fact/non-expert and expert discovery, as well as the certification of this case as a class action,

17    are necessary to finalize and determine the adequacy and availability of all remedies, including

18    legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff

19    therefore reserves his right to amend this complaint and/or assert additional facts that

20    demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal

21    remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to

22    the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or

23    the entry of an order granting equitable relief.

24                              **CLASS ACTION ALLEGATIONS**

25        40.    Plaintiff brings this action as a class action pursuant to California Code of Civil

26    Procedure Section 382 and California Civil Code Section 1781 on behalf of the following Class:

27        All persons who purchased the Product for personal use in California within the
28        applicable statute of limitations until the date class notice is disseminated.

CROSNER LEGAL, P.C.

41.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; and (iii) judicial officers and their immediate family members and associated court staff assigned to the case.

42.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

43.     The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

45.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Product;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Product;

c.      Whether Defendant made material omissions concerning the Product that were likely to deceive the public;

d.      Whether Plaintiff and the Class are entitled to injunctive relief;

e.      Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

46.     Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the

14

CLASS ACTION COMPLAINT

1    Class was susceptible to the same deceptive, misleading conduct and purchased the Product.

2    Plaintiff is entitled to relief under the same causes of action as the other Class Members.

3    47.    Adequacy: Plaintiff is an adequate Class representative because Plaintiff's

4    interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the

5    consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong

6    interest in vindicating the rights of the class; Plaintiff has retained counsel competent and

7    experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this

8    action. Plaintiff has no interests which conflict with those of the Class. The Class Members'

9    interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel.

10   Defendant has acted in a manner generally applicable to the Class, making relief appropriate

11   with respect to Plaintiff and the Class Members. The prosecution of separate actions by

12   individual Class Members would create a risk of inconsistent and varying adjudications.

13   48.    The Class is properly brought and should be maintained as a class action because

14   a class action is superior to traditional litigation of this controversy. A class action is superior to

15   the other available methods for the fair and efficient adjudication of this controversy because:

16   a.    The joinder of hundreds of individual Class Members is impracticable,

17   cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

18   b.    The individual claims of the Class Members may be relatively modest compared

19   with the expense of litigating the claim, thereby making it impracticable, unduly burdensome,

20   and expensive to justify individual actions;

21   c.    When Defendant's liability has been adjudicated, all Class Members' claims can

22   be determined by the Court and administered efficiently in a manner far less burdensome and

23   expensive than if it were attempted through filing, discovery, and trial of all individual cases;

24   d.    This class action will promote orderly, efficient, expeditious, and appropriate

25   adjudication and administration of Class claims;

26   e.    Plaintiff knows of no difficulty to be encountered in the management of this

27   action that would preclude its maintenance as a class action;

28   f.    This class action will assure uniformity of decisions among Class Members;

CROSNER LEGAL, P.C.

CROSNER LEGAL. P.C.

1    g.    The Class is readily definable and prosecution of this action as a class action will

2    eliminate the possibility of repetitious litigation; and

3    h.    Class Members' interests in individually controlling the prosecution of separate

4    actions is outweighed by their interest in efficient resolution by single class action;

5    49.    Additionally or in the alternative, the Class also may be certified because

6    Defendant has acted or refused to act on grounds generally applicable to the Class thereby

7    making final declaratory and/or injunctive relief with respect to the members of the Class as a

8    whole, appropriate.

9    50.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on

10   behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent

11   Defendant from engaging in the acts described, and to require Defendant to provide full

12   restitution to Plaintiff and Class members.

13   51.    Unless the Class is certified, Defendant will retain monies that were taken from

14   Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide

15   injunction is issued, Defendant will continue to commit the violations alleged and the members

16   of the Class and the general public will continue to be misled.

17   **FIRST CLAIM FOR RELIEF**

18   **Violation of California's Consumers Legal Remedies Act**

19   **Cal. Civ. Code §§ 1750 *et seq.***

20   52.    Plaintiff realleges and incorporates by reference all allegations contained in this

21   complaint, as though fully set forth herein.

22   53.    Plaintiff brings this claim under the CLRA individually and on behalf of the Class

23   against Defendant.

24   54.    At all times relevant hereto, Plaintiff and the members of the Class were

25   "consumer[s]," as defined in California Civil Code section 1761(d).

26   55.    At all relevant times, Defendant constituted a "person," as defined in California

27   Civil Code section 1761(c).

28

16

1    56.    At all relevant times, the Product manufactured, marketed, advertised, and sold

2    by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

3    57.    The purchases of the Product by Plaintiff and the members of the Class were and

4    are "transactions" within the meaning of California Civil Code section 1761(e).

5    58.    Defendant disseminated, or caused to be disseminated, through their advertising,

6    false and misleading representations, including the Product's labeling that it does not contain

7    hazardous substances such as high levels of lead Defendant fails to disclose that the Product

8    contains high levels of lead. This is a material omission as reasonable consumer would find the

9    fact that the Product contains high levels of lead to be important to their decision in purchasing

10    the Product. Defendant's representations violate the CLRA in the following ways:

11    a)    Defendant represented that the Product has characteristics, ingredients, uses, and

12    benefits which it does not have (Cal. Civ. Code § 1770(a)(5));

13    b)    Defendant represented that the Product is of a particular standard, quality, or

14    grade, which it is not (Cal. Civ. Code § 1770(a)(7));

15    c)    Defendant advertised the Product with an intent not to sell the Product as

16    advertised (Cal. Civ. Code § 1770(a)(9)); and

17    d)    Defendant represented that the subject of a transaction has been supplied in

18    accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

19    59.    Defendant violated the CLRA because the Product contains high levels of lead.

20    Defendant knew or should have known that consumers would want to know that the Product

21    contains high levels of lead. Defendant had a duty to disclose that the Product contains high

22    levels of lead. Based on the statutory text, legislative history (which includes the National

23    Consumer Act), the judicial decisions and statutes that existed when the CLRA was enacted, the

24    subsequent case law, and the many amendments to the CLRA from 1975 through 2016, failures

25    to disclose material facts are actionable under the CLRA. In particular, subdivision (a)(5), (7),

26    and (9) of Civil Code section 1770 proscribe material omissions. Defendant's labeling of the

27    Product also created the net-impression that the Product does not contain hazardous substances

28    such as lead. Defendant had exclusive knowledge of the material fact that the Product contains

17

CROSNER LEGAL, P.C.

1  high levels of lead, and Defendant failed to disclose this fact. Defendant actively concealed this

2  material fact. The fact that the Product contains high levels of lead is material to consumers

3  because reasonable consumers would deem the existence of lead in a product they eat important

4  in determining whether to buy the Product.

5      60.    Defendant's actions as described herein were done with conscious disregard of

6  Plaintiff and the Class members' rights and were wanton and malicious.

7      61.    Defendant's wrongful business practices constituted, and constitute, a continuing

8  course of conduct in violation of the CLRA, since Defendant is still representing that the Product

9  has characteristics which it does not have.

10      62.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of

11  the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices

12  alleged herein.

13      63.    Pursuant to California Civil Code section 1782, Plaintiff will notify Defendant in

14  writing by certified mail of the alleged violations of the CLRA and demand that Defendant

15  rectify the problems associated with the actions detailed above and give notice to all affected

16  consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems

17  associated with the actions detailed herein and give notice to all affected consumers within 30

18  days of the date of written notice pursuant to section 1782 of the CLRA, Plaintiff will amend

19  this complaint to seek actual, punitive, and statutory damages, as appropriate.

20      64.    Pursuant to section 1780(d) of the CLRA, attached hereto is an affidavit showing

21  that this action was commenced in a proper forum.

22                          **SECOND CLAIM FOR RELIEF**

23                  **Violation of California's Unfair Competition Law**

24                      **Cal. Bus. & Prof. Code §§ 17200 *et seq.***

25      65.    Plaintiff realleges and incorporates by reference all allegations contained in this

26  complaint, as though fully set forth herein.

27      66.    Plaintiff brings this claim under the UCL individually and on behalf of the Class

28  against Defendant.

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

67.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

68.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and violating California Civil Code sections 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16), California Business & Professions Code section 17500 *et seq.*, California common law breach of implied warranties, and California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Proposition 65"), Cal. Health & Safety Code § 25249.5, *et seq.* Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

69.    Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Product contains high levels of lead) of which it had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. For example, several of Defendant's competitors sell fiber products that do not contain high levels of lead.

70.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business

1  practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers

2  into believing the Products do not contain high levels of lead.

3      71.    Plaintiff and the other members of the Class have in fact been deceived as a result

4  of their reliance on Defendant's material representations and omissions. This reliance has caused

5  harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's

6  Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a

7  result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices.

8      72.    Defendant's wrongful business practices and violations of the UCL are ongoing.

9      73.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result

10  of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be

11  calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest

12  in an amount according to proof.

13      74.    Unless restrained and enjoined, Defendant will continue to engage in the above-

14  described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business

15  & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1)

16  restitution from Defendant of all money obtained from Plaintiff and the other Class members as

17  a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such

18  practices in the State of California that do not comply with California law; and (3) all other relief

19  this Court deems appropriate, consistent with California Business & Professions Code section

20  17203.

21  <div align="center">**THIRD CLAIM FOR RELIEF**</div>

22  <div align="center">**Breach of Implied Warranties**</div>

23      75.    Plaintiff realleges and incorporates by reference all allegations contained in this

24  complaint, as though fully set forth herein.

25      76.    Plaintiff brings this claim individually and on behalf of the Class against

26  Defendant.

27

28

CROSNER LEGAL, P.C.

77.     Defendant was at all relevant times the manufacturer, distributor, and/or warrantor of the Product. Defendant knew or had reason to know of the specific use for which its Product was purchased.

78.     Defendant, through the acts and omissions set forth herein, in the sale, marketing, and promotion of the Product made implied representations to Plaintiff and the Class that the Product was fit for the particular purpose of consumption. However, the Product is hazardous to consume. Further, Defendant cannot legally sell the product in California without a Proposition 65 disclosure on the labels, and thus, by definition, the Product is not fit for the particular purpose of consumption. At the time the Product was sold, Defendant knew or should have known that Plaintiff and members of the Class would rely on Defendant's skill and judgment regarding the safety and composition of the Product. Because the Product contains high levels of lead, it is not of the same quality as those generally accepted in the trade and were not fit for the ordinary purposes for which the Products are used (i.e., consumption).

79.     By advertising and selling the Product at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Product is merchantable and conforms to the promises or affirmations of fact made on the Product's packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant's labeling and advertising, combined with the implied warranty of merchantability, constitute a warranty that the Product does not contain hazardous substances such as high levels of lead.

80.     In reliance on Defendant's skill and judgment and the implied warranties of fitness for this purpose and merchantability, Plaintiff and members of the Class purchased the Product for use to consume. Defendant knew that the Product would be purchased and used without further testing by Plaintiff and Class members.

81.     Consumers are the intended beneficiaries of the implied warranty as they are the ones Defendant made the Product for and specifically marketed the Product to consumers.

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1    Defendant breached the implied warranty of merchantability. Because the Product contains high

2    levels of lead, it is not fit for ordinary use (i.e., consumption).

3        82.    As a direct and proximate result of Defendant's breach of warranty, Plaintiff and

4    members of the Class were harmed in the amount of the purchase price they paid for the Product.

5    Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses

6    and other damages including, but not limited to, the amounts paid for the Product, and any

7    interest that would have accrued on those monies, in an amount to be proven at trial.

8    Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages,

9    restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for the

10   loss of that money, as well as injunctive relief to enjoin Defendant's misconduct to prevent

11   ongoing and future harm that will result.

12       83.    Plaintiff seeks punitive damages pursuant to this cause of action for breach of

13   warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful

14   conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct

15   warranting an award of punitive damages as permitted by law. Defendant's misconduct is

16   malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for the

17   Product that they were not, in fact, receiving. Defendant willfully and knowingly disregarded

18   the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous

19   consequences of its conduct and deliberately failed to avoid misleading consumers, including

20   Plaintiff. Defendant's misconduct is oppressive. Reasonable consumers would look down upon

21   it and/or otherwise would despise such misconduct. This misconduct subjected Plaintiff and

22   consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's

23   misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or

24   concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful

25   conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted,

26   approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

27

28

1

**REQUEST FOR RELIEF**

2        Plaintiff, individually, and on behalf of all others similarly situated, requests for relief

3  pursuant to each claim set forth in this complaint, as follows:

4        a.     Declaring that this action is a proper class action, certifying the Class as requested

5  herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel

6  as Class Counsel;

7        b.     Ordering restitution and disgorgement of all profits and unjust enrichment that

8  Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful,

9  unfair, and fraudulent business practices;

10       c.     Ordering injunctive relief as permitted by law or equity, including enjoining

11  Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to

12  engage in a corrective advertising campaign;

13       d.     Ordering damages for Plaintiff and the Class;

14       e.     Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the

15  other members of the Class;

16       f.     Ordering Defendant to pay both pre- and post-judgment interest on any amounts

17  awarded; and

18       g.     Ordering such other and further relief as may be just and proper.

19

**JURY DEMAND**

20        Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

21

22  Dated: March 20, 2024               CROSNER LEGAL, P.C.

23

                                By:     */s/ Michael T. Houchin*

24                                      MICHAEL T. HOUCHIN

25                             9440 Santa Monica Blvd. Suite 301

26                             Beverly Hills, CA 90210
                             Tel: (866) 276-7637

27                             Fax: (310) 510-6429
                             mhouchin@crosnerlegal.com

28                             *Attorneys for Plaintiff and the Proposed Class*

23

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

**Affidavit Pursuant to Civil Code Section 1780(d)**

I, MICHAEL T. HOUCHIN, declare as follows:

1.    I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2.    This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3.    Defendant Walmart, Inc.  has done, and is doing, business in California, including in this county. Such business includes the marketing, promotion, distribution, and sale of the Product within the State of California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed March 20, 2024 at San Diego, California.


CROSNER LEGAL, P.C.


By:      */s/ Michael T. Houchin*
         MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

# EXHIBIT A



ConsumerLab.com

www.consumerlab.com/reviews/psyllium-supplements/psyllium/

# Psyllium Fiber Supplements Review

Find the Best Psyllium Fiber Supplement and Avoid Lead.

Latest Update

Lead in Meta Mucil

 Medically reviewed and edited by Tod Cooperman, M.D.

Updated March 11, 2024

Published February 29, 2024



Watch the video

3/18/24, 12:00 PM

Case 4:24-cv-02353-HSG    Document 1    Filed 04/19/24    Page 42 of 108
Psyllium Fiber Supplements Review & Top Pick - ConsumerLab.com



## Summary

- **What is psyllium?**

  Psyllium supplements are made from psyllium seed *husk*, the mucilaginous coat that surrounds the psyllium seed. The husk is about 90% fiber, most of which (about 80% of the fiber) is soluble fiber. This soluble fiber can attract and bind water (absorbing about 10 times its weight in water), forming a non-fermentable, viscous gel. The remaining 20% of the fiber in psyllium husk is *in*soluble fiber that can also add bulk to stool. (See What It Is.)

- **What are the health benefits of psyllium?**

  In the gut, the gel created by psyllium's soluble fiber 1) occupies volume and slows digestion, leading to fullness and helping to regulate blood sugar levels, and 2) softens and adds bulk to stool, providing a laxative effect. The gel may also bind to and reduce the absorption of a variety of compounds, which may explain its cholesterol-lowering effect. It is unknown if taking psyllium is helpful in achieving long-term weight loss. Methylcellulose, a synthetic fiber, also provides a laxative effect but lacks the other benefits of psyllium. (See What It Does.)

- **What problems did ConsumerLab's tests show with psyllium products?**

  ConsumerLab.com's tests of the quality of psyllium products revealed that 4 out of 9 were contaminated with excessive amounts of lead — as much as 8.5 micrograms per 4 grams of fiber, yielding over 60X the California warning level in a maximum daily serving. Lead was found in all products, but those with the least contained only 1 mcg of lead or less per 4-gram serving of fiber. However, all products contained their expected amounts of soluble and insoluble fiber. (See What CL Found.)

- **What is the best psyllium?**

ConsumerLab's overall _**Top Pick**_ among Approved psyllium products (including those sold as supplements, foods, and OTC drugs) was selected for having the least lead contamination, the right amount of pure psyllium husk, and the correct amounts of soluble and insoluble fiber.



- **What is the right dose of psyllium and how should psyllium be taken?**

  When starting with psyllium, start slow — with as little as ½ tablespoon of psyllium husk or ½ teaspoon of husk powder (which is denser, so a smaller serving is used). Dose can be increased to a full tablespoon or teaspoon per serving, taken one to three times daily, depending on the use.

  Take psyllium with _lots of water_ — at least 8 to 12 ounces with each serving, and more afterward. If mixing psyllium husk or powder in liquid, drink the liquid right after mixing – before the liquid starts to gel. Timing around meals depends on whether you are using for laxation (stool softening), appetite control, or cholesterol-lowering. (See How to Use.)

- **How safe is psyllium and what are its side effects?**

  Due to its fiber, psyllium can cause bloating, and some gas – particularly when you start. Too much can cause diarrhea. Taking with too little water can cause constipation. Don't take capsules if you have difficulty swallowing. Medications should be taken at least one hour before or four hours after taking psyllium to help avoid interactions that can delay or reduce drug absorption. (See Concerns and Cautions.)

## What It Is:

Psyllium supplements are made from psyllium seed _husk_, the mucilaginous coat that surrounds the psyllium seed. The husk is about 90% fiber, most of which (about 80% of the fiber) is soluble fiber. This soluble fiber can attract and bind water (absorbing about 10 times its weight in water), forming a non-fermentable, viscous gel. In the gut, this gel 1) occupies volume and slows digestion, leading to fullness and helping to regulate blood sugar levels, and 2) softens and adds bulk to stool, providing a laxative effect. The gel may also bind to and reduce the absorption of a variety of compounds, which may explain its cholesterol-lowering effect but also its ability to reduce absorption of medicines (see Concerns and Cautions).

The remaining 20% of the fiber in psyllium husk is _in_soluble fiber that can also add bulk to stool.

Two other types of fiber used in supplements for laxation are synthetic: Polycarbophil (which is found in _Fibercon_ and is soluble and viscous) and methylcellulose (which is found in _Citrucel_ and is mainly insoluble and made by chemically treating cellulose from plants).

If you are interested in soluble fiber that _is_ fermentable, this can be found in prebiotic foods that naturally contain fructooligosaccharides (FOS) or inulin, such as chicory root and Jerusalem artichokes, or in supplements that contain these and other fermentable fibers such as the semi-synthetic fibers PHGG, soluble corn fiber, and wheat dextrin. These feed gut bacteria (causing some gas) but, as they are not viscous, they are not as effective as psyllium in causing fullness or in softening the stool. See the **Prebiotic Supplements Review** for more details and our tests of products.

## What It Does:

What distinguishes psyllium from many other types of fiber supplements is the very broad range of clinical effects that have been demonstrated with psyllium. For example, two synthetic fibers that have a laxative effect — methylcellulose (_Citrucel_) and polycarbophil (_Fibercon_) — do not have clinical evidence demonstrating other uses. (Methylcellulose is also used as a thickening agent in foods and as a coating agent on tablets.)

The soluble, viscous fiber beta-glucan in oat bran is perhaps closest to psyllium with regard to versatility — although, as discussed below, psyllium fiber may be preferable for treating chronic constipation.

## Laxative Use

As noted above, most of the fiber in psyllium attracts water, which softens stool, acting as a laxative. Psyllium is the *only* type of supplemental fiber recommended by the American Gastroenterological Association (AGA) as a first-line therapy for individuals with **chronic** constipation not due to an underlying disease, particularly those with low intake of dietary fiber. AGA guidelines state that, for individuals with mild chronic constipation, psyllium fiber supplements may be worth trying before trying osmotic laxatives (such as polyethylene glycol (PEG) 3350, e.g., *MiraLAX*), and emphasizes that psyllium supplements be taken with plenty of water. According to AGA guidelines, there is *not* enough quality evidence to recommend inulin or bran fiber supplements for this use (Chang, Gastroenterology 2023).

On the other hand, experts have concluded that there is insufficient evidence to recommend psyllium or other fiber supplements for **occasional** constipation (i.e., symptoms that are bothersome but that occur irregularly or infrequently) due to lack of clinical data supporting use for occasional symptoms. Instead, for occasional constipation, osmotic laxatives such as PEG 3350, stimulant laxatives such as senna (e.g., *Senokot*), or possibly magnesium-containing compounds are recommended (Brenner, Clin Gastroenterol Hepatol 2023).

Psyllium does not share the dangers of stimulant laxatives (e.g., Ex-Lax and Senokot), which, although more potent, can be dangerous if overused, or of lubricant laxatives such as mineral oil, which can cause vitamin depletion. Note that stool softeners such as docusate (Colace) will, like psyllium, draw more water into stool but they do not provide fiber.

## Fecal Incontinence

Guidelines from a task force of gastroenterology experts state that psyllium supplementation may help reduce incontinent episodes among people with fecal incontinence (inability to control bowel movements) and loose stools (Assmann, United European Gastroenterol J 2022). This benefit arises from the ability of psyllium fiber to give looser stools more form. This recommendation is supported by evidence from three studies that used about 5 to 14 grams of psyllium fiber per day (Bliss, Nurs Res 2001; Bliss, Res Nurs Health 2014; Markland, Dis Colon Rectum 2015). In fact, the 2015 study found psyllium powder reduced weekly incontinent episodes as much as taking about 2 mg (one capsule) daily of the antidiarrheal medication loperamide (*Imodium*).

## Ulcerative Colitis (UC)

Psyllium does not appear to be useful in *treating* ulcerative colitis. A study among 27 adults with mild to moderate ulcerative colitis showed that taking 10 grams of psyllium daily for eight weeks did *not* increase the percentage of patients who achieved clinical response compared to placebo, nor did it improve the response rate of fecal microbiota transplantation (FMT) compared to FMT alone (Gogokhia, Inflamm Bowel Dis 2024).

Despite some evidence suggesting a possible benefit of psyllium on ulcerative colitis (Hallert, Scand J Gastroenterol 1991), experts conclude that evidence is insufficient to universally recommend high-fiber intake for *maintaining* UC remission, noting that, in some cases, people with ulcerative colitis poorly tolerate fiber-rich products such as psyllium and may actually benefit from *eliminating* or *reducing* fiber intake (Bischoff, Clin Nutr 2020).

## Irritable Bowel Syndrome (IBS)

Preliminary evidence suggests psyllium may be helpful for some symptoms of IBS with constipation. A randomized, double-blind clinical trial among children with IBS showed that taking psyllium daily for six weeks reduced the number of pain episodes during the last two weeks of treatment compared to placebo (average reduction of 8.2 episodes vs. 4.1 episodes), although there were no between-group differences in the intensity of pain or percentage of normal stools. Psyllium was given once daily at a dose of 6 grams for children ages 7 to 11 and 12 grams for children 12 to 18 (Shulman, Clin Gastroenterol Hepatol 2017).

## Appetite and Hunger Control

Psyllium may help control hunger, possibly by causing a sense of fullness when it expands and takes up volume in the stomach. Small, short-term studies typically funded by supplement companies suggest that some of these ingredients can modestly aid in **weight loss**, although it is not clear if they help when used long-term. Also, there are risks associated with the use of these supplements.

A clinical study (funded by the maker of *Metamucil*) of 30 healthy adults put on reduced-calorie, low-fiber diets found that drinking 6.8 g of psyllium (2 teaspoons) mixed with 1.2 cups of water before breakfast and lunch for 3 days modestly decreased hunger and desire to eat between meals, as compared to a placebo of matching taste and color. A lower dose (3.4 g) was not as effective and a higher dose (10.2 g) was no more effective. The specific psyllium product used was *Metamucil Orange Sugar Free Fiber Singles* (Procter & Gamble). Mild to moderate gastrointestinal side effects were reported in about 7% of people taking 6.8 g of psyllium or placebo (Brum, 2016 Appetite). Keep in mind that since the participants in this study were put on a low-fiber diet (to better assess the effects of psyllium), it is unclear if the same benefits would be seen for a person already consuming greater amounts of fiber from their diet.

Be aware that a supplement called *ColonBroom* has been promoted to help with weight loss. It contains 3.6 grams of psyllium husk powder per small scoop along with flavoring and rice hulls (as a minor ingredient). It is not known if *ColonBroom* helps people lose weight — and it costs significantly more than most psyllium husk products.

See information about other supplements that may control hunger and appetite such as glucomannan (which also expands in the stomach) and those that suppress appetite through the nervous system, likely due to their caffeine content, such as green tea extracts.

## Blood Sugar Control and Insulin

Psyllium may improve blood glucose levels and insulin response in people with diabetes, as its soluble fiber slows the absorption of sugars (Xiao, Phytother Res 2020). There is limited evidence that psyllium reduces the risk of type 2 diabetes. The FDA permits the following "qualified" health claim on products: "Psyllium husk may reduce the risk of type 2 diabetes, although the FDA has concluded that there is very little scientific evidence for this claim." (FDA, 2014)

Be aware that labels on supplements and food products must list 4 calories per gram of soluble fiber, as is the case with digestible carbohydrates. However, this appears to be misleading, as the soluble fiber in psyllium is not fermentable and, being fiber, is also not digestible. As such, it would not be expected to contribute as the same amount of calories as digestible and/or fermentable carbohydrates.

## Cholesterol Lowering

Psyllium may modestly lower total and LDL ("bad") cholesterol. Since 1998, the U.S. Food and Drug Administration (FDA) has allowed psyllium products to claim that soluble fiber from psyllium seed husk, when included as part of a diet low in saturated fat and cholesterol, may reduce the risk of coronary heart disease by lowering blood cholesterol levels (Federal Register, 1998). This health claim is permitted on products that provide at least 7 grams *per day* of soluble fiber from psyllium husk (the amount found in about 10.2 grams of husk) or at least 1.7 grams of soluble fiber from psyllium *per serving* (assuming four servings per day). (The FDA permits a similar claim on whole oat products that provide 3 grams or more of beta-glucan soluble fiber – see our review of Oat Cereals Review. Note, however, that the soluble fiber of beta-glucan is fermentable, while the soluble fiber in psyllium is not, providing psyllium, but not oats, a laxative effect.)

## Quality Concerns and Tests Performed:

Neither the FDA, nor any other federal or state agency, routinely tests psyllium product for quality prior to sale.

## Heavy metals

A quality concern with plant-based supplements, such as psyllium, is potential contamination with heavy metals such as lead, arsenic, and cadmium. Even if ingested at low levels, heavy metals can accumulate in the body and cause damage over time. Lead, for example, accumulates in bones, and can cause a variety of symptoms including abdominal pain, impaired mental functioning, high blood pressure and anemia.

ConsumerLab.com's tests of psyllium products in 2021 revealed that 5 out of 8 were contaminated with excessive amounts of **lead** — as much as 11 micrograms per 5 grams of psyllium husk (22 times the daily amount permitted in California without a warning label). Lead was found in all products, but those with the least contained only 0.4 to 0.6 mcg per 5 gram serving. However, all of the products contained their claimed amounts of soluble and insoluble fiber.

A class action lawsuit filed on December 6, 2023, against The Procter & Gamble Co. ("P&G"), the distributor of *Metamucil* psyllium fiber supplements, alleges that the company misrepresented *Metamucil* products as safe and failed to disclose that the products "contain dangerous levels of lead" based on tests by an independent laboratory completed in July 2023. In 2021, ConsumerLab.com found lead in the *Metamucil* product that it tested, *4-in-1 Fiber - Orange*. It was Not Approved for serving sizes of more than serving (1 rounded teaspoon) per day as a single serving contained 2.4 mcg of lead, and it suggested up to 6 teaspoons per day, which would contain 14.5 mcg of lead.) The complaint indicates that the following amounts of lead were found per recommended single serving (one rounded teaspoon or one 0.21-oz packet) in *Metamucil* products: *Metamucil Sugar Free On-the-Go Orange Flavored* (1.15 mcg), *Metamucil Sugar Free Orange Flavored* (1.68 mcg), *Metamucil Sugar Free Berry Flavored* (2.05 mcg), *Metamucil No Added Sweeteners Unflavored* (1.91 mcg), *Metamucil Made with Real Sugar Orange Flavored* (0.75 mcg), *Metamucil Made with Real Sugar Unflavored* (2.27 mcg), *Metamucil Fiber + Collagen Peptides Orange Flavored* (0.34 mcg), *Metamucil Premium Blend Orange Flavored* (1.05 mcg). According to these results, the total amount of lead consumed if taking the maximum recommended daily intake of one of these products could range from between 4.48 mcg to 13.62 mcg of lead per day.

## Counterfeits

Counterfeit psyllium supplements have been sold. NOW Foods, the manufacturer of *NOW Psyllium Husk 500 mg Veg Caps* – which was tested in this Review — **reported** in May 2023 that counterfeit versions of this product (and other NOW products) have been sold on Amazon by a company called A2X1. As of April 11, 2023, Amazon has blocked all sales from this seller. All the counterfeit supplements identified by NOW, including those that were labeled as softgels, contained small white capsules. NOW Foods tested the counterfeit supplements and found they each were filled with rice flour, and some contained trace amounts of the prescription drug sildenafil (Viagra), which can lower blood pressure and potentially interact with other medications. The counterfeit products were also lacking a UPC number, a lot number, or any imprint on the bottom of bottles, and had slight differences in labeling (i.e., the edges of the label are squared instead of rounded, and the font for the NOW logo and product names were slightly elongated).

## CL's Tests

ConsumerLab.com, as part of its mission to independently evaluate products that affect health, wellness, and nutrition, purchased a variety of psyllium and methylcellulose products sold in the U.S. as supplements, foods, or over-the-counter medicine and tested each to determine whether it possessed the claimed and minimum expected amount of fiber. Psyllium products were also tested to see if they were contaminated with unacceptable levels of lead, arsenic, cadmium, and mercury (see Testing Methods and Passing Score).

# What CL Found:

Only four of the eight psyllium products that ConsumerLab selected for review passed testing and were fully Approved by ConsumerLab for quality, while three were Conditionally Approved, and one was Not Approved. One product was also approved for passing the same tests for CL's voluntary Quality Certification Program. Lead contamination was a common problem, which ConsumerLab and others have found in the past.

3/18/24, 12:00 PM

Case 4:24-cv-02353-HSG     Document 1     Filed 04/19/24     Page 47 of 108
Psyllium Fiber Supplements Review & Top Pick - ConsumerLab.com

## Lead Contamination

None of the products exceeded ConsumerLab's limits for arsenic or cadmium, but several exceeded limits for lead contamination. Lead is a known contaminant in psyllium husks. In California, for example, where the state has set a very strict limit on how much lead can occur in a daily serving of a product before a warning label is required (the limit is 0.5 mcg), there have been many cases in which psyllium products have exceeded the limit without displaying the proper warning.

The 3rd column of the Results table shows the amount of lead found per daily serving of each product. Amounts exceeding limits are shown in red in the table. Any product exceeding the limits at its suggested daily serving sizes was Not Approved or, if it only exceeded limits at its highest daily dosing, Conditionally Approved.

However, since serving sizes ranged across products from about 1 gram to 7 grams and many products suggested a range of *daily* servings, a better way to compare the lead in products is to show the amount of lead discovered in set amount of psyllium, such as a 5-gram serving (about 4 grams of fiber). This is demonstrated in the graph below, which shows that lead was found in all products, but some had much higher concentrations than others.

The **lowest** concentration of lead per 4 grams of fiber was 0.58 mcg in *Organic India Psyllium*, while the **highest concentration of lead was 8.5 mcg of lead in *Equate Daily Fiber*** — that's *nearly 15 times* as much lead as in *Organic India*.



Interestingly, the exact same very low concentration of lead was found in *Organic India Psyllium* when ConsumerLab tested it in 2021. However, in the two other products that had been tested in 2021, lead concentrations (i.e., lead per 4 grams of fiber found) have increased: *NOW Psyllium Husk Caps* contained 1.3 mcg vs the current 3 mcg, and *Yerba Prima Psyllium Whole Husks* contained 0.4 mcg vs the current 1.6 mcg. Our psyllium tests in 2021 also found high lead concentrations in *Sunergetic Psyllium Husk* (8 mcg) and *Kate Naturals Organic Psyllium Hust Powder* (11 mcg), as well as moderate concentrations in *Metamucil 4-in-1 Fiber Orange* (3.2 mcg) *Rite Aid Fiber Therapy* (2.7 mcg) and *Up & Up Fiber Supplement* (2 mcg).

To be Approved for quality, ConsumerLab required that any product suggesting a serving size for children under 12 years of age could not exceed the strict California limit of 0.5 mcg of lead per daily serving. For adults and older children, a suggested serving of less than 5 grams could not exceed 1.3 mcg of lead per serving, and a suggested serving of 5 grams or more could not exceed 2.5 mcg and not more than 4 mcg per day (See How Products Were Evaluated).

The following product *failed* for lead contamination at all serving sizes. It is *Not* **Approved**:

- *Equate [Walmart] Daily Fiber* — Orange Smooth — A single serving had 6.5 mcg of lead.

The following products *failed* for lead contamination only at their *maximum* suggested serving sizes. They are *Conditionally* **Approved** at lower serving sizes:

- *Konsyl Daily Psyllium Fiber* - Failed at 3 servings (3 teaspoons), which would contain 4.9 mcg of lead.

- *Meta Mucil 3-in-1 Fiber* — Failed at 2, 3, and 4 servings (5 capsules per serving), which would, respectively, contain 2.2 mcg, 3.3 mcg, and 4.5 mcg of lead.

- *NOW Psyllium Husk Caps* — Failed at 2 and 3 servings (3 capsules per serving. serving), which would, respectively, contain 1.6 mcg and 2.4 mcg of lead.

As *Equate* suggests taking as much as six servings of one rounded tablespoon of its psyllium husk powder daily, this would mean consuming as much as 38.7 mcg of lead per day — which is well beyond tolerable limits for all age groups.

***How much of a health risk is lead in psyllium?*** For particularly vulnerable populations, the FDA has established maximum daily intakes (i.e., daily limits) for lead from all sources of exposure, called the Interim Reference Levels (IRLs). The current limits were set in 2022 and are 2.2 mcg per day for children, and 8.8 mcg per day for females of childbearing age (Flannery, Regul Toxicol Pharmacol 2022). An IRL of 12.5 mcg per day has been recommended for adults in general (Dolan, Regul Toxicol Pharmacol 2020). According to the agency, the limit for females of childbearing age helps protect against possible fetal exposure in women who are unaware that they are pregnant and against infant exposure during nursing.

One potentially mitigating factor is that the soluble fiber in psyllium may hold onto much of the lead in the husk, preventing it from being absorbed in the gut. In fact, a mouse study suggested that psyllium added to the diet might help *remove* lead (Basiri, Bioact Carb Diet Fibre 2020).

# Fiber

All of the products contained fiber in the amounts expected from their labels per serving. As shown below, this ranged from just less than 0.5 grams in a capsule of *Swanson Psyllium Husks* or a tablet of *Citrucel*, to 5 grams in a teaspoon of *Konsyl Daily Psyllium Fiber*. Note, however, that listed serving sizes on products can be quite different, which helps explain differences in the graph. For example, Swanson suggests a serving of just one capsule, while NOW suggests 3 capsules, explaining why a serving of *Swanson* provides about one-third as much fiber as a serving of *NOW*.

As expected from psyllium, most of the fiber found was soluble fiber (tan colored bar segments in the graph below) as opposed to insoluble fiber (brown bar segments). In contrast, methylcellulose (in *Citrucel*) is mainly insoluble fiber, as was found in our tests.

Be aware that some of the products contain "whole husk" (a flaky powder) and others contain "husk powder " in which the husks have been ground to a finer powder that can blend somewhat more evenly into drinks and recipes. Either form is okay to use but, in terms of dosing, take into consideration that husk powders are denser (less air), so that 1 teaspoon of "husk powder" is equivalent in fiber to 1 *tablespoon* of "whole husk" — each provides about 5 grams of psyllium husk. One psyllium powder, Equate, has more added sugar than psyllium and, due to the much higher density of sugar, a tablespoon of Equate is twice the weight of the other psyllium powders while providing somewhat less fiber.



## Cost

The cost to get a 4-gram serving of fiber (about 5 grams of psyllium) ranged from just 12 cents for *Viva Naturals Organic Psyllium Husk Powder* to $1.26 cents in *Meta Mucil 3-in-1 Fiber* — a 10-fold difference! Products providing psyllium in bags or cylinders were generally less expensive ways of getting psyllium than products sold in capsules — although *Swanson Psyllium Husk* capsules were much less expensive than other fiber pills. The highest cost for fiber was from *Citrucel*, which provides fiber as methylcellulose in caplets.



Cost of 4 Grams of Fiber*

*Costs based on amounts found.

## Top Picks:

### Psyllium

***Overall and for mixing in liquid*:**

**Organic India Psyllium Whole Husk Fiber — Certified Organic** is our **overall Top Pick** among psyllium products for several reasons. In addition to providing all the soluble and insoluble fiber listed on its label, *Organic India* had the lowest concentration of lead of any product (0.6 mcg per tablespoon), which is the same amount we found in 2021. At that time, *Yerba Prima Psyllium Whole Husks* had slightly less lead (0.4 mcg per tablespoon), but, in our current tests, it had slightly more lead (1.6 mcg per tablespoon) – although this is still relatively low for psyllium. *Organic India* is also certified USDA Organic, meaning, among other things, that synthetic pesticides are not used. The only other organic psyllium product reviewed was *Viva Naturals*, and while it was less than half the cost of *Organic India* (12 cents vs 29 cents per serving), it had four times as much lead per serving (2.5 mcg per teaspoon).

To be compliant with California's Proposition 65 law, *Organic India*, has a warning on its label indicating that it contains a chemical — lead in this case — known to cause birth defects or other reproductive harm. Several other products include this warning, which is needed for products sold in California.

3/18/24, 12:00 PM

Case 4:24-cv-02353-HSG    Document 1    Filed 04/19/24    Page 51 of 108
Psyllium Fiber Supplements Review & Top Pick - ConsumerLab.com

Another thing that we like about *Organic India* (as well as some of the other products) is that it is just psyllium husk with no other ingredients. In contrast, *Equate Daily Fiber* contains more sugar (8 grams per tablespoon) than fiber (3 grams per tablespoon), adding unnecessary calories.

Psyllium has little taste and can easily be consumed mixed only in water – or with other ingredients of your choosing. We like the usage suggestions on *Yerba Prima*, which indicate that it should be consumed immediately after mixing (before it thickens), mixed into at least 10 oz of liquid, and that drinking an additional glass of water afterwards is advisable. Also take any medications at least one hour before or four hours after taking psyllium and follow other precautions (see <u>Concerns and Cautions</u>).

A close runner up to *Organic India* is *Yerba Prima Psyllium Husks Powder*, which is a finely ground powder and costs a bit less (21 cents per serving) but contains slightly more lead and is not organic.

### *For taking as a pill:*

If you prefer the convenience of taking psyllium as a pill, **Swanson Psyllium Husk Caps is our Top Pick**. Its capsules contain psyllium husk powder and are very similar to (but slightly wider than) *NOW Psyllium Husk Caps* and *Metam Mucil 3-in-1 Fiber* capsules but cost much less – only 2 cents per capsule versus 8 cents for *NOW* and 11 cents for *Meta Mucil*. All three of these have moderate concentrations of lead and are not organic, so it would not be preferable to *Organic India* unless you need the convenience of a capsule.

The only caveat with *Swanson* is that its label suggests a relatively small serving size. The label suggests taking 1 capsule (610 mg of psyllium husk) three times daily. That's not a lot of psyllium or fiber. You may need to take more. For example, *NOW* suggests taking 3 capsules (each containing 500 mg of psyllium husk) 2 to 3 times daily, and *Meta Mucil* suggests 2 to 5 capsules (each containing approximately 500 mg of psyllium husk) up to 4 times a day. A serving of any of these should be taken with at least 8 ounces of water and, as *Meta Mucil* suggests, while upright (allowing gravity to move the capsules down your esophagus).

## Methylcellulose

If you are only interested in a laxative, methylcellulose is another option and is the active ingredient in the fiber supplement **Citrucel**, which was Approved in our tests and is our **Top Pick** for methylcellulose. There is no heavy metal concern with methylcellulose, but it, unlike psyllium, does not help lower cholesterol or control blood sugar after a meal. For adults and older children, it is taken as a 2-caplet serving (with at least 8 fl oz of water) and this can be increased as needed to up to six servings per day (12 caplets), although for children ages 6 to 11, it is taken as a single caplet, not to exceed 6 caplets daily. Each caplet costs 15 cents, so the cost per daily serving for adults can range from 30 cents to $1.80 depending on how many servings you take, making *Citrucel* somewhat more expensive than most psyllium products.

## Test Results by Product:

Listed alphabetically below are test results for nine psyllium products and one methylcellulose product. All were selected for testing by ConsumerLab.com, except for one (indicated with a CL flask icon) that was tested at the request of its manufacturer/distributor through ConsumerLab.com's voluntary <u>Quality Certification Program</u> and is included for having passed testing.

Shown for each product is the claimed amount and form of psyllium husk (or methylcellulose) in each serving, as well as daily serving suggestions from the label. Results of heavy metal testing for psyllium products are also shown, with a particular focus on the amounts of lead found. Notable features, price, and the cost to obtain 5 grams of psyllium husk are also shown. To be listed as "Approved," a product had to contain its expected amounts of soluble and insoluble fiber and not exceed limits for heavy metals (see <u>How Products Were Evaluated</u>). The full list of ingredients is available for each product in the final column.

**Results of ConsumerLab.com Testing of Psyllium & Methylcellulose Products**
(Price Checks are not included in printed reviews)

| Approval Status Product Name | Serving Size Psyllium and Fiber Claimed and Found | Heavy Metal (Per Serving) [Lead Per 4 Grams of Fiber Found] | Suggested Directions on Label | Cost for Suggested Serving [Cost for 4 g of Fiber Found] Price | Notable Features | Full List of Ingredients Per Serving |
|---|---|---|---|---|---|---|
| Psyllium Powders: | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **NOT APPROVED**<br>**Equate™ [Walmart] Daily Fiber - Orange Smooth**<br>Dist. by Walmart Inc. | 1 rounded tbsp [12 g] (psyllium husk powder)<br><br>**Claimed:** Psyllium:<br>Total fiber: 3 g<br>- Soluble: 2 g<br>- Insoluble:<br><br>**Found:**<br>Total fiber: 3 g ✔<br>- Soluble: 2.3 g ✔<br>- Insoluble: 0.74 g | **Heavy Metals:**<br>FAIL<br>Lead: 6.5 mcg (38.7 mcg at suggested maximum 6 servings per day) [8.5 mcg/4 g fiber]<br>Arsenic: 0.12 mcg<br>Cadmium: 0.12 mcg<br>Mercury:<br><br>*Taste: Fine, light brown powder, mixes easily in cold water, making orange-flavored liquid that is slightly sweet*<br><br>*Additional Information*<br><br>*Heavy Metals: FAIL*<br>*Lead: 6.5 mcg (38.7 mcg at suggested maximum 6 servings per day) [8.5 mcg/4 g fiber]*<br>*Arsenic: 0.12 mcg*<br>*Cadmium: 0.12 mcg*<br>*Mercury:*<br><br>*Taste: Fine, light brown powder, mixes easily* | For feeling less hungry between meals: Adults & children 12 yrs. and over: Two rounded tablespoons in 8 or more oz. of liquid with meals, up to 3 times daily<br><br>Additional Information<br><br>For feeling less hungry between meals: Adults & children 12 yrs. and over: Two rounded tablespoons in 8 or more oz. of liquid with meals, up to 3 times daily.<br><br>For lowering cholesterol to promote heart health: Adults & children 12 yrs. & over: One rounded tablespoon in 8 oz. of liquid, 3 times daily.<br><br>For maintaining healthy blood sugar levels as part of your diet: Adults & children 12 yrs. and over: One rounded tablespoon in 8 oz. of liquid, 3 times daily.<br><br>For promoting and maintaining digestive health: Adults & children 12 yrs. and over: One rounded tablespoon in 8 oz. of liquid up | $0.14/rounded tbsp<br><br>[$0.19]<br><br>$15.88/48.2 oz [1,360 g] container (approx. 113 servings) | Iron 0.7 mg, sodium 5 mg & potassium 35 mg per rounded tbsp<br><br>*Kosher. Made in the USA with domestic and imported ingredients.*<br><br>**Precaution:** Consuming this product can expose you to chemicals including lead<br><br>Additional Information<br><br>Iron 0.7 mg, sodium 5 mg & potassium 35 mg per rounded tbsp<br><br>*Kosher. Made in the USA with domestic and imported ingredients.*<br><br>**Precaution:** Consuming this product can expose you to chemicals including lead, which is known to the State of California to cause cancer. For more information, go to . Allergy Alert: This product may cause allergic reactions in | 1 rounded tbsp Calories 45, Total Carbohydrate 12 g, Dietary Fiber [Soluble Fiber 2 g] 3 g, Total Sugars [Includes Added Sugars 8 g] 8 g, Iron 0.7 mg, Sodium 5 mg, Potassium 35 mg.<br><br>Ingredients: Sucrose<br><br>Additional Information<br><br>1 rounded tbsp Calories 45, Total Carbohydrate 12 g, Dietary Fiber [Soluble Fiber 2 g] 3 g, Total Sugars [Includes Added Sugars 8 g] 8 g, Iron 0.7 mg, Sodium 5 mg, Potassium 35 mg.<br><br>Ingredients: Sucrose, Psyllium Husk, Citric Acid, Natural and Artificial Orange Flavor, Silica, FD&C Yellow No. 6. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | in cold water, making orange-flavored liquid that is slightly sweet (from 16 grams of added sugar per serving). Becomes slightly thick after several minutes. | to 3 times daily for fiber supplementation. | | people sensitive to inhaled or ingested psyllium. | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Conditionally Approved** at 1-2 servings/day for adults and older children  Konsyl® Daily Psyllium Fiber  Dist. by Konsyl Pharmaceuticals, Inc. | 1 tsp [6 g] (psyllium husk powder)  **Claimed:** Psyllium: 6 g Total fiber: 5 g - Soluble: 3 g - Insoluble:  **Found:** Total fiber: 5 g ✓ - Soluble: 3.9 g ✓ - Insoluble: 1.1 g | **Heavy Metals:** *Conditional pass* Lead: 1.6 mcg (4.9 mcg at suggested maximum 3 servings per day) [1.3 mcg/4 g fiber] Arsenic: 0.18 mcg Cadmium: 0.12 mcg Mercury:  *Taste: Fine, light brown powder, mixes easily in cold water*  *Additional Information*  **Heavy Metals:** *Conditional pass* Lead: 1.6 mcg (4.9 mcg at suggested maximum 3 servings per day) [1.3 mcg/4 g fiber] Arsenic: 0.18 mcg Cadmium: 0.12 mcg Mercury:  *Taste: Fine, light brown powder, mixes easily in cold water,* | Adults and children 12 years and over: One teaspoon 1 to 3 times daily. Children 6 to under 12 years of age: 1/2 teaspoon 1 to 3 times daily. Mix or shake 1 teaspoon (6g) with at least 8 fluid ounces of your favorite beverage. Follow with additional fluid to aid product action, before or after meals, mornings or evenings. | $0.26/tsp  [$0.21]  $15.76/12.7 oz [360 g] pouch (approx. 60 servings) | Iron 1 mg per tsp  *Vegan, Non-GMO, Gluten Free, No Added Sugar.*  Product of India  *Additional Information*  Iron 1 mg per tsp  *Vegan, Non-GMO, Gluten Free, No Added Sugar.*  Product of India.  **Precaution:** Warning: This product can expose you to chemicals including lead, which is known to the State of California to cause birth defects or other reproductive harm. For more information, go to . Allergy Alert: Inhaled or ingested psyllium powder way cause an allergic reaction in people sensitive to psyllium. | 1 tsp Calories 20, Total Carbohydrate 5 g, Dietary Fiber [Soluble Fiber 3 g] 5 g, Iron 1 mg.  Ingredient: Powder Psyllium Husks. |

Case 4:24-cv-02353-HSG    Document 1    Filed 04/19/24    Page 56 of 108

| | | | | | | |
|---|---|---|---|---|---|---|
| | | *making cloudy liquid with mild woody flavor (of psyllium husk). Thickens somewhat over several minutes.* | | | | |

| | 1 tbsp [5 g] (whole psyllium husks) | **Heavy Metals:** Pass Lead: 0.6 mcg (1.2 mcg at suggested maximum 2 servings per day) [0.58 mcg/4 g fiber] Arsenic: 0.1 mcg Cadmium: 0.1 mcg Mercury: | Adults and Children over 12 years: 1-2 Serving per day. Best taken before or between meals. Mix 1 tablespoon with at least 10 oz of water, juice or your favorite beverage. Stir and drink immediately. If too thick, add more liquid. Drinking an additional glass of water afterwards is advisable to ensure hydration. | $0.29/tbsp [$0.28] $19.99/12 oz [340 g] container (approx. 68 servings) | *USDA Organic seal. Non GMO Project Verified seal. Vegan. Vegetarian. Gluten Free.* Product of India. **Precaution:** Warning: Reproductive Harm - . | 1 tbsp Calories 18, Total Carbohydrate 4 g, Dietary Fiber [Soluble Fiber 3 g, Insoluble Fiber 1 g] 4 g, Organic Whole Husk Psyllium (seed husk) (*Plantago ovata*) 5 g. |
|---|---|---|---|---|---|---|
| APPROVED Top Pick overall and for mixing in liquid Organic India® Psyllium Mfd. by Organic India Pvt. Ltd. | **Claimed:** Psyllium: 5 g Total fiber: 4 g - Soluble: 3 g - Insoluble: 1 g **Found:** Total fiber: 4.1 g ✔ - Soluble: 3.2 g ✔ - Insoluble: 0.99 g ✔ | *Taste:* Fluffy, light brown powder, mixes fairly easily in cold water *Additional Information* ***Heavy Metals:*** *Pass Lead: 0.6 mcg (1.2 mcg at suggested maximum 2 servings per day) [0.58 mcg/4 g fiber] Arsenic: 0.1 mcg Cadmium: 0.1 mcg Mercury:* *Taste:* *Fluffy, light brown powder, mixes fairly easily in cold water, making cloudy liquid* | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | *with many small, suspended pieces of husk with mild "woody" flavor (of psyllium husk). Thickens somewhat over several minutes.* | | | | |

| | 1 tsp [5 g] (psyllium husk powder) | Heavy Metals: Pass | Take 1 teaspoon (5 g) once daily with 8 oz. of liquid, or as recommended by your healthcare practitioner. Stir briskly and drink immediately. Suggested to start with 1 serving per day, gradually increasing to desired intake. | $0.12/tsp | Quality Assurance International Certified Organic seal. Non GMO Project Verified seal. Certified Paleo. Keto Friendly. Vegan. Manufactured Without Added Colors, Flavors, Preservatives, Or Salt. | 1 tsp Calories 20, Total Carbohydrate 4 g, Dietary Fiber 4 g, Iron 1 mg, Organic Psyllium Husk (Plantago ovata, Seed Husk) 5 g. |
|---|---|---|---|---|---|---|
| APPROVED | | Lead: 2.5 mcg [2.5 mcg/4 g fiber] | | [$0.12] | | |
| Viva Naturals Organic™ Psyllium Husk Powder | Claimed: Psyllium: 5 g Total fiber: 4 g - Soluble: - Insoluble: | Arsenic: 0.4 mcg Cadmium: 0.15 mcg Mercury: | | $16.99/24 oz [680 g] pouch (approx. 136 servings) | | |
| Dist. by Viva Naturals Inc. | Found: Total fiber: 4 g ✔ - Soluble: 3.1 g - Insoluble: 0.87 g | Taste: Finely ground, light brown powder, mixes fairly easily in cold water, making a cloudy liquid with mild "woody" flavor (of psyllium husk). Thickens somewhat over several minutes. | | | Product Of India | |
| | | | | | Additional Information | |
| | | | | | Quality Assurance International Certified Organic seal. Non GMO Project Verified seal. Certified Paleo. Keto Friendly. Vegan. Manufactured Without Added Colors, Flavors, Preservatives, Or Salt. | |
| | | | | | Product Of India. | |
| | | | | | Precaution: Warning: Cancer and Reproductive Harm - . Produced In A Facility That Also Processes Peanuts, Tree Nuts, Milk And Soy. Allergy Alert: This product may | |

3/18/24, 12:00 PM

Case 4:24-cv-02353-HSG    Document 1    Filed 04/19/24    Page 60 of 108
Psyllium Fiber Supplements Review & Top Pick - ConsumerLab.com

| | | | | | cause allergic reactions in people sensitive to inhaled or ingested psyllium. | |
|---|---|---|---|---|---|---|

| | | | | | | |
|---|---|---|---|---|---|---|
| **APPROVED**<br><br>Yerba Prima® Psyllium Husks Powder<br><br>Dist. by Yerba Prima, Inc. | 1 tbsp [5 g] (psyllium husk powder)<br><br>**Claimed:**<br>Psyllium: 5 g<br>Total fiber: 4.5 g<br>- Soluble: 3.5 g<br>- Insoluble: 1 g<br><br>**Found:**<br>Total fiber: 3.9 g ✓<br>- Soluble: 2.8 g ✓<br>- Insoluble: 1.1 g ✓ | **Heavy Metals:** Pass<br>Lead: 0.98 mcg [1 mcg/4 g fiber]<br>Arsenic: 0.25 mcg<br>Cadmium: 0.25 mcg<br>Mercury:<br><br>*Taste: Finely ground, light brown powder, mixes fairly easily in cold water, making a cloudy liquid with mild "woody" flavor (of psyllium husk). Thickens somewhat over several minutes.* | Adults - Start with one serving per day, gradually increase to desired daily intake. Stir powder briskly into at least 8 ounces (a full glass) of liquid. | $0.21/tbsp<br><br>[$0.21]<br><br>$27.97/24 oz [680 g] container (approx. 136 servings) | Calcium 10 mg & potassium 43 mg per tbsp<br><br>*Non GMO Project Verified seal. Gluten Free. No preservatives. No artificial flavor. No artificial color. No added sugar, binders or fillers.*<br><br>Made in U.S.A.<br><br>Additional Information<br><br>Calcium 10 mg & potassium 43 mg per tbsp<br><br>*Non GMO Project Verified seal. Gluten Free. No preservatives. No artificial flavor. No artificial color. No added sugar, binders or fillers.*<br><br>Made in U.S.A.<br><br>**Precaution:** Warning: This product contains a chemical known to the state of California to cause birth defects or other reproductive harm. For more information, visit | 1 tbsp<br>Calories 15, Sodium 4 mg, Total Carbohydrate 4.5 g, Dietary Fiber [Insoluble Fiber 1.0 g, Soluble Fiber 3.5 g] 4.5 g, Calcium 10 mg, Potassium 43 mg.<br><br>Ingredients: Psyllium. |

3/18/24, 12:00 PM

Case 4:24-cv-02353-HSG    Document 1    Filed 04/19/24    Page 62 of 108
Psyllium Fiber Supplements Review & Top Pick - ConsumerLab.com

| | | | | | | |
|---|---|---|---|---|---|---|
| ͻ<br>APPROVED<br>ϵ<br><br>Yerba Prima®<br>Psyllium Whole<br>Husks - Colon<br>Cleanser ⚠️⁺<br><br><br><br>Dist. by Yerba<br>Prima, Inc. | 1 tbsp [5 g]<br>(whole psyllium<br>husks)<br><br>**Claimed:**<br>Psyllium: 5 g<br>Total fiber: 4.5 g<br>- Soluble: 3.5 g<br>- Insoluble: 1 g<br><br>**Found:**<br>Total fiber: 4 g ✓<br>- Soluble: 2.9 g ✓<br>- Insoluble: 1.1 g<br>✓ | **Heavy Metals:**<br>Pass<br>Lead: 1.6 mcg<br>[1.6 mcg/4 g<br>fiber]<br>Arsenic: 0.25<br>mcg<br>Cadmium: 0.2<br>mcg<br>Mercury:<br><br>*Taste: Fluffy,*<br>*light brown*<br>*powder, mixes*<br>*fairly easily in*<br>*cold water,*<br>*making liquid*<br>*with many*<br>*small,*<br>*suspended*<br>*pieces of husk*<br>*with mild*<br>*"woody" flavor*<br>*(of psyllium*<br>*husk)*<br><br>Additional<br>Information<br><br>**Heavy**<br>**Metals:** *Pass*<br>*Lead: 1.6 mcg*<br>*[1.6 mcg/4 g*<br>*fiber]*<br>*Arsenic: 0.25*<br>*mcg*<br>*Cadmium: 0.2*<br>*mcg*<br>*Mercury:*<br><br>*Taste: Fluffy,*<br>*light brown*<br>*powder,*<br>*mixes fairly*<br>*easily in cold*<br>*water, making*<br>*liquid with*<br>*many small,* | Adults - Start with one<br>serving per day,<br>gradually increase to<br>desired daily intake.<br>Stir powder briskly into<br>at least 8 ounces (a<br>full glass) of liquid. | $0.21/tbsp<br><br>[$0.21]<br><br>$14.60/12 oz<br>[340 g]<br>container<br>(approx. 68<br>servings) | Calcium 10 mg,<br>Sodium 4 mg &<br>potassium 43 mg<br>per tbsp<br><br>*Non GMO Project*<br>*Verified seal. Gluten*<br>*Free. No*<br>*preservatives. No*<br>*artificial flavor. No*<br>*artificial color. No*<br>*added sugar,*<br>*binders or fillers.*<br><br>Made in U.S.A.<br><br>Additional<br>Information<br><br>Calcium 10 mg,<br>Sodium 4 mg &<br>potassium 43 mg<br>per tbsp<br><br>*Non GMO Project*<br>*Verified seal.*<br>*Gluten Free. No*<br>*preservatives. No*<br>*artificial flavor.*<br>*No artificial color.*<br>*No added sugar,*<br>*binders or fillers.*<br><br>Made in U.S.A.<br><br>**Precaution:**<br>Warning: This<br>product contains<br>a chemical<br>known to the<br>state of<br>California to<br>cause birth<br>defects or other<br>reproductive<br>harm. For more | 1 tbsp<br>Calories 15, Total<br>Carbohydrate 4.5<br>g, Dietary Fiber<br>[Soluble Fiber 3.5<br>g, Insoluble Fiber<br>1.0 g] 4.5 g,<br>Calcium 10 mg,<br>Sodium 4 mg,<br>Potassium 43<br>mg.<br><br>Ingredients:<br>Psyllium. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | suspended pieces of husk with mild "woody" flavor (of psyllium husk). Thickens somewhat over several minutes. | | | information, visit | |

**Psyllium Pills (capsules):**

| | | | | | | |
|---|---|---|---|---|---|---|
| **Conditionally Approved** at 1 serving/day Meta Mucil® 3-in-1 Fiber Dist. by Procter & Gamble | 5 capsules (psyllium husk powder) **Claimed:** Psyllium: Total fiber: 2 g - Soluble: 2 g - Insoluble: **Found:** Total fiber: 1.8 g ✔ - Soluble: 1.5 g ✔ - Insoluble: 0.35 g | **Heavy Metals:** *Conditional pass* Lead: 1.1 mcg (4.5 mcg at suggested maximum 4 servings per day) [2.5 mcg/4 g fiber] Arsenic: 0.02 mcg Cadmium: 0.02 mcg Mercury: Large capsule | For adults 12 years and older. Swallow 1 capsule at a time and take in an upright position. Digestive Health: 2 to 5 capsules up to 4 times per day. Heart Health: 5 capsules up to 4 times per day. Healthy Blood Sugar Level: 5 capsules 4 times per day. | $0.57/5 capsules [$1.26] $33.98/300 capsules | Iron 0.4 mg & potassium 25 mg per 5 capsules *Gluten Free.* **Precaution:** Allergy Alert: This product may cause allergic reactions in people sensitive to inhaled or ingested psyllium. | 5 capsules Calories 5, Total Carb 2 g, Dietary Fiber [Soluble Fiber 2 g], 2 g, Protein less than 1 g, Iron 0.4 mg, Potassium 25 mg. Ingredients: Psyllium husk, gelatin. |

| | 3 veg capsules (psyllium husk powder) | **Heavy Metals:** *Conditional pass* Lead: 0.8 mcg (2.4 mcg at suggested maximum 3 servings per day) [3 mcg/4 g fiber] Arsenic: 0.02 mcg Cadmium: 0.02 mcg Mercury: Large veg capsule | Take 3 capsules with 8 oz. glass of liquid, 2 to 3 times daily. | $0.25/3 veg capsules [$0.97] $16.99/200 veg capsules | *Non GMO Project Verified seal. Kosher. Halal.* Made and quality tested in the USA with globally sourced ingredients. **Precaution:** Not manufactured with yeast, wheat, gluten, soy, corn, milk, egg, fish, shellfish, tree nut or sesame ingredients | 3 veg capsules Calories 5, Total Carbohydrate 1.3 g, Dietary Fiber [Soluble Fiber 1.0 g, Insoluble Fiber 0.1 g] 1.1 g, Psyllium (Seed Husk) 1,500 mg. Other Ingredients: Hypromellose (cellulose capsule) and Stearic Acid (vegetable source). |
|---|---|---|---|---|---|---|
| **Conditionally Approved** at 2 servings/day NOW® Psyllium Husk Caps Mfd. by NOW Foods | **Claimed:** Psyllium: 1.5 g Total fiber: 1.1 g - Soluble: 1 g - Insoluble: 0.1 g **Found:** Total fiber: 1.1 g ✓ - Soluble: 0.74 g ✓ - Insoluble: 0.32 g ✓ | | | | Additional Information *Non GMO Project Verified seal. Kosher. Halal.* Made and quality tested in the USA with globally sourced ingredients. **Precaution:** Not manufactured with yeast, wheat, gluten, soy, corn, milk, egg, fish, shellfish, tree nut or sesame ingredients. Produced in a GMP facility that processes other ingredients containing these allergens. | |

| | 1 capsule (psyllium husk powder) | **Heavy Metals:** Pass Lead: 0.32 mcg (0.96 mcg at suggested 3 servings per day) [3.1 mcg/4 g fiber] Arsenic: 0.03 mcg Cadmium: 0.02 mcg Mercury: Large capsule | Take one capsule three times per day with a full 8-ounce glass of water. | $0.02/capsule [$0.23] $7.19/300 capsules | **Precaution:** Warning: Cancer and Reproductive Harm — . | 1 capsule Calories 5, Total Carbohydrate 1 g, Dietary Fiber <1 g, Psyllium Seed Husk 610 mg. |
|---|---|---|---|---|---|---|
| ʒ APPROVED ᴄ ʒ Top Pick ᴄ for taking as a pill Swanson® Psyllium Husks  Dist. by Swanson Health Products | **Claimed:** Psyllium: 0.61 g Total fiber: <1 g - Soluble: - Insoluble: **Found:** Total fiber: 0.41 g ✓ - Soluble: 0.28 g - Insoluble: 0.13 g | | | | | Other Ingredients: Gelatin. |

Methylcellulose Pill (caplet):

| | 1 caplet (methylcellulose) | Heavy Metals: | Adults & children 12 years of age and over: Start with 2 caplets. Increase as needed up to 6 times per day. Do not exceed 12 caplets per day. | $0.15/caplet | None. | 1 caplet |
|---|---|---|---|---|---|---|
| APPROVED | | Also, passed for disintegration | | [$1.47] | | Methylcellulose (a non-allergenic fiber) 500 mg. |
| Top Pick | **Claimed:** | | | $14.97/100 caplets | | |
| for methylcellulose | Methylcellulose: 0.5 g | Large caplet | | | | Inactive Ingredients: |
| Citrucel | Total fiber: | | Children 6-11 years of age: Start with 1 caplet. Increase as needed up to 6 times per day. Do not exceed 6 caplets per day | | | Crospovidone, dibasic calcium phosphate, FD&C yellow no.6 aluminum lake, magnesium stearate, maltodextrin, povidone, sodium lauryl sulfate. |
| | - Soluble: | | | | | |
| | - Insoluble: | | | | | |
| | **Found:** | | | | | |
| | Total fiber: 0.43 g ✓ | | Additional Information | | | |
| | - Soluble: 0.03 g | | Adults & children 12 years of age and over: Start with 2 caplets. Increase as needed up to 6 times per day. Do not exceed 12 caplets per day. | | | |
| Dist. by GSK Consumer Healthcare | - Insoluble: 0.41 g | | | | | |
| | | | Children 6-11 years of age: Start with 1 caplet. Increase as needed up to 6 times per day. Do not exceed 6 caplets per day. | | | |
| | | | Children under 6 years of age: Consult a doctor. | | | |

Unless otherwise noted, information about the products listed above is based on the samples purchased by ConsumerLab.com (CL) for this Product Review. The samples are from a single lot of the respective product. Be aware that there may be lot-to-lot variation in products, particularly natural products. Manufacturers may change ingredients and label information at any time, so be sure to check labels carefully when evaluating the product you use or buy as it may be different from the product we tested. Manufacturers may also change ingredient suppliers, which can affect product quality.

The information contained in this report is based on the compilation and review of information from product labeling and analytic testing. CL applies what it believes to be the most appropriate testing methods and standards. The information in this report does not reflect the opinion or recommendation of CL, its officers or employees. CL cannot assure the accuracy of information.

Copyright ConsumerLab.com, LLC, 2024. All rights reserved. Not to be reproduced, excerpted, or cited in any fashion without the express written permission of ConsumerLab.com LLC

## ConsumerTips™:

## How To Use

When starting on psyllium, it is generally recommended to **start with a low dose** and, as needed, increase slowly over time. A starting amount can be just a ½ to 1 teaspoon of husk power or ½ to 1 tablespoon of whole husk (as these provide equivalent amounts of fiber).

Drink plenty of fluids with *and* after taking psyllium as just a small amount of psyllium absorbs large amount of water. At least 8 to 12 ounces of water should be taken with each serving, followed by more water. ***The water is needed for the fiber to work.*** In addition, the fiber can be binding and cause constipation if not taken with adequate water. Be aware that caffeinated drinks, like coffee and tea, can cause you to lose water, so, if you drink them while using psyllium, you may need extra water to offset that loss.

When mixing psyllium with water or any other liquid, be sure to ***drink it right away***, before it begins to gel and thicken. When first mixed with water, psyllium husk has the consistency and mouth feel of diluted applesauce, but, over several minutes, is more like regular applesauce and, if left for more time, becomes a jell.

As psyllium will settle in a glass, **add additional water** as you get down to the bottom.

## Dose

**For laxation:** 1 tablespoon of whole husk or 1 teaspoon of husk powder taken one to three times daily. These can be taken with or between meals. For laxation, find the lowest dose that works for you. The best time of day to take psyllium for laxative use may be the morning, as gravity during day may help keep the psyllium moving through your gastrointestinal tract.

**For heart health:** For a heart health benefit, the serving size is similar to that for laxation, but at least two servings should be taken daily with meals (preferably larger meals), so as to provide at least 7 grams of soluble fiber daily.

**For fullness/satiety:** Serving sizes are up to double that those for laxation, but should be taken shortly before or with meals.

## Concerns and Cautions:

Psyllium can cause **bloating and some gas,** particularly when you start. This may be reduced by reducing the dose or dividing it over the course of the day. Bloating may be caused by the gas as well as increased water in the bowel drawn in by the soluble fiber. The gas is due to fermentation of the fermentable portion of the fiber.

At too high a dose, psyllium can cause **diarrhea.** It can also cause **constipation** if not taken with enough water.

Do not use psyllium capsules if you have **difficulty swallowing,** as it they can expand, and, certainly, don't drink psyllium powders that have not already been allowed to expand in liquid. This is of particular concern if a capsule gets stuck and begins to disintegrate in the esophagus, allowing its psyllium content to absorb water and expand.

Consult your doctor before using psyllium if you have **kidney disease,** particularly if you are on dialysis, since psyllium can affect your hydration requirements.

Psyllium can cause **allergic reactions.** This appears to be most common in people who have been exposed to psyllium dust, including nurses involved in administering psyllium products to patients (James, J Allerg Clin Immun 1991). In some people, regular use of psyllium may cause an increase in **eosinophils** (a type of white blood cell), levels of which are known to increase in response to allergens, infection or inflammation (Nelson, JAMA 1980).

Psyllium can reduce or delay the **absorption of drugs.** To be safe, it is recommended that medications be taken at least one hour before or four hours after taking psyllium. Consult your physician before using psyllium if you are taking medication. Psyllium can reduce the **absorption of minerals,** however typical daily doses of *Metamucil* have not been found to affect blood levels of iron, calcium or zinc

(Anderson, Arch Intern Med 1988; Heaney, J Am Geriatr Soc 1995). No reduction in blood levels of magnesium were reported in a study of people with type 2 diabetes who consumed 10.5 grams of psyllium daily for two months while maintaining their regular diets (Naser, J Nutr Disorders Ther 2018). (Note that a variety of other laxatives can potentially interfere with nutrient absorption.)

For more information about psyllium, including clinical evidence, safety and drug interactions, see the ConsumerLab.com Fiber Supplements Expert Webinar.

+ 18 sources

---

Information on this site is provided for informational purposes only. It is not an endorsement of any product nor is it meant to substitute for the advice provided by physicians or other healthcare professionals. The information contained herein should not be used for diagnosing or treating a health problem or disease. Consumers should inform their healthcare providers of the dietary supplements they take.

back to top

---

*Member: 619924* | Printed: 03/18/2024 2:58 p.m.

# EXHIBIT 2

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp<br>**FILED**<br>Superior Court of California<br>County of Alameda<br>03/20/2024<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>D. Franklin |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |
| PLAINTIFF:<br>JAIME GUZMAN individually, and on behalf of all others similarly s | |
| DEFENDANT:<br>WALMART, INC. | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>24CV068489 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| | |
|---|---|
| Date: 07/18/2024    Time: 8:30 AM    Dept.: 23 | |
| Location: Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>03/20/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>D. Franklin |
| PLAINTIFF/PETITIONER:<br>JAIME GUZMAN individually, and on behalf of all others similarly situated, | |
| DEFENDANT/RESPONDENT:<br>WALMART, INC. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV068489 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Craig W. Straub
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Chad Finke, Executive Officer / Clerk of the Court

Dated: 03/20/2024                    By:

D. Franklin, Deputy Clerk

**CERTIFICATE OF MAILING**

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| Michael T. Houchin (SBN 305541)<br>CROSNER LEGAL, P.C.<br>9440 Santa Monica Blvd Suite 301<br>Beverly Hills, CA 90210<br>*Telephone No:* 310-496-4818 | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>03/22/2024 at 08:00:38 PM<br>By: Suzanne Pesko,<br>Deputy Clerk |

| | |
|---|---|
| *Attorney For:* Plaintiff | *Ref. No. or File No.:* 01338- Guzman v. Walmart |

*Insert name of Court, and Judicial District and Branch Court:*
SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ALAMEDA

*Plaintiff:* JAIMÉ GUZMÁN individually, and on behalf of all others similarly situated
*Defendant:* WALMART, INC.

| PROOF OF SERVICE<br>SUMMONS | Hearing Date: | Time: | Dept/Div: | Case Number:<br>24CV068489 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Summons; Class Action Complaint; Civil Case Cover Sheet Addendum; Notice of Case Management Conference; Register of Actions Hearings List; Alternative Dispute Resolution (ADR) Information Packet; Stipulation To Attend Alternative Dispute Resolution (Adr) And Delay Initial Case Management Conference For 90 Days

3.   *a.*  Party served:    WALMART, INC.
    *b.*  Person served:  Diana Ruiz, Authorized to Accept Service for CT Corporation System, Agent for Service of Process

4. *Address where the party was served:*  330 North Brand Boulevard Suite 700, Glendale, CA 91203

5. *I served the party:*
  a. **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* Thu, Mar 21 2024 (2) at *(time):* 12:40 PM
  (1)  [X]  (business)
  (2)  [ ]  (home)
  (3)  [ ]  (other) :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a.  [ ]  as an individual defendant.
  b.  [ ]  as the person sued under the fictitious name of *(specify):*
  c.  [ ]  as occupant.
  d.  [X]  On behalf of *(specify):*    WALMART, INC.
    under the following Code of Civil Procedure section:

| | |
|---|---|
| [X] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| [ ] other: | |



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*10656043*
*(5661796)*
**Page 1 of 2**

| Plaintiff: | JAIMÉ GUZMÁN individually, and on behalf of all others similarly situated | Case Number: |
|---|---|---|
| Defendant: | WALMART, INC. | 24CV068489 |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a. Name:                Douglas Forrest
   b. Address:             **FIRST LEGAL**
                           1517 W. Beverly Blvd.
                           LOS ANGELES, CA 90026
   c. Telephone number:    (213) 250-1111
   d. **The fee** for service was:  $119.00
   e. I am:
      (1) ☐  not a registered California process server.
      (2) ☐  exempt from registration under Business and Professions Code section 22350(b).
      (3) ☒  a registered California process server:
          (i) ☐ owner  ☐ employee  ☒ independent contractor
          (ii) Registration No:  5141
          (iii) County:  Los Angeles

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

03/21/2024
*(Date)*

*Douglas Forrest*

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF
SERVICE
SUMMONS**

*10656043*
*(5661796)*
**Page 2 of 2**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

COURTHOUSE ADDRESS:

Rene C. Davidson Courthouse

Administration Building, 1221 Oak Street, Oakland, CA 94612

PLAINTIFF(S) / PETI

JAIME GUZMAN individually, and on behalf of all others similarly situa

WALMART, INC.

## NOTICE OF CASE REASSIGNMENT

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda
03/27/2024
Clad Flike, Executive Officer / Clerk of the Court
By: _____ Deputy
Angel Logan

CASE NUMBER:

24CV068489

EFFECTIVE   03/27/2024

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

ASSIGNED JUDGE:   Michael Markman
DEPARTMENT:       23
LOCATION:         Rene C. Davidson Courthouse
                  Administration Building, 1221 Oak Street, Oakland, CA 94612
PHONE NUMBER:     (510) 267-6939
FAX NUMBER:
EMAIL ADDRESS:    Dept23@alameda.courts.ca.gov

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 101.3)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate).  Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available.  For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

**NOTICE OF CASE REASSIGNMENT**

**ASSIGNED FOR ALL PURPOSES TO**
**JUDGE** Michael Markman
**DEPARTMENT** 23

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference.  The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days."   The court's website contains this form and other ADR information.  If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

Angel Logan, Deputy Clerk

**NOTICE OF CASE REASSIGNMENT**

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

03/27/2024

Chad Finke, Executive Officer/Clerk of the Court

By: _[signature]_ Deputy

Angel Logan

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
1225 Fallon Street, Oakland, CA 94612

PLAINTIFF/PETITIONER:
JAIME GUZMAN individually, and on behalf of all others similarly situated,

DEFENDANT/RESPONDENT:
WALMART, INC.

## CERTIFICATE OF MAILING

CASE NUMBER:
24CV068489

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Craig W. Straub
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Chad Finke, Executive Officer / Clerk of the Court

Dated: 03/27/2024                    By:

_[signature]_

Angel Logan, Deputy Clerk

**CERTIFICATE OF MAILING**

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>03/27/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>Angel Logan |
| PLAINTIFF/PETITIONER:<br>JAIME GUZMAN individually, and on behalf of all others similarly situated, | |
| DEFENDANT/RESPONDENT:<br>WALMART, INC. | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV068489 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Notice of Case Reassignment (Civil), Notice of Case Management Conference, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Summons on Complaint, Complaint entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Craig W. Straub
craig@crosnerlegal.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 03/27/2024                                        By:

Angel Logan, Deputy Clerk

**EXHIBIT 3**

1

2

3

4

5

6

7

8

9

10

CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiff and the Proposed Class*

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
04/04/2024 at 05:34:16 PM
By: Shabra Iyamu,
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| JAIMÉ GUZMÁN individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC.,<br><br>Defendant. | Case No. 24CV068489<br><br>**PLAINTIFF'S PEREMPTORY CHALLENGE OF THE HONORABLE TARA DESAUTELS; DECLARATION OF MICHAEL T. HOUCHIN IN SUPPORT THEREOF**<br><br>[CODE OF CIV. PROC. § 170.6] |

21

22

23

24

25

26

27

28

The attorneys for Plaintiff JAIMÉ GUZMÁN ("Plaintiff") in the above-entitled action, which involves contested issues of law and fact, and which has been assigned for all purposes including trial to the Honorable Tara Desautels, Judge of the above caption Court, respectfully exercise a peremptory challenge pursuant to Code of Civil Procedure section 170.6 and request that this case be reassigned from the Honorable Tara Desautels to another judge, and that no matters hereinafter arising in this action be heard by or assigned to the Honorable Tara Desautels on the grounds that the Judge is prejudiced against Plaintiff and/or the interests of the Plaintiff in this action. This motion is based on the matters contained herein, on California

---

PLAINTIFF'S PEREMPTORY CHALLENGE OF THE HONORABLE TARA DESAUTELS;
DECLARATION OF MICHAEL T. HOUCHIN IN SUPPORT THEREOF

Code of Civil procedure section 170.6, and the supporting declaration of Michael T. Houchin

attached hereto and filed herewith.

WHEREFORE, Plaintiff prays that the relief herein requested be granted.

CROSNER LEGAL, P.C.

By:      /s/ Michael T. Houchin
         MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

ÖÒÞÖÒÁÖÒÁÚ UUV
V@Áã` æ^Á@æ Áã^^}Áâæá{ ã ãd æã`^|Á^^æ•ã}^åÈ

04/12/2024

Tara Desautels / Judge

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MICHAEL T. HOUCHIN

I, Michael T. Houchin, hereby declare and state on my oath and under penalty of perjury as follows: I am an attorney duly licensed to practice law in the State of California and I am a member of the law firm of Crosner Legal, P.C., attorneys of record for Plaintiff JAIMÉ GUZMÁN ("Plaintiff"), in the above-entitled matter. I am informed and believe that the Honorable Tara Desautels is the judicial officer assigned for all purposes in this matter, including the trial in this action, and is prejudiced against the interests of Plaintiff. On this basis, Plaintiff and the undersigned believe they cannot have a fair and impartial trial or hearing before this Judge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on this 4th day of April 2024 at San Diego, California.

CROSNER LEGAL, P.C.

By:     */s/ Michael T. Houchin*
         MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com

2

| | Reserved for Clerk's File Stamp |
|---|---|
| # SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | **FILED** Superior Court of California County of Alameda 04/05/2024 Clad Finky, Executive Officer / Clerk of the Court By: _____ Deputy R Tumonong |
| COURTHOUSE ADDRESS: Rene C. Davidson Courthouse Administration Building, 1221 Oak Street, Oakland, CA 94612 | |
| PLAINTIFF(S) / PETI JAIME GUZMAN individually, and on behalf of all others similarly situa | |
| WALMART, INC. | |

| **NOTICE OF CASE REASSIGNMENT** | CASE NUMBER: 24CV068489 |
|---|---|

**EFFECTIVE**  04/05/2024

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

ASSIGNED JUDGE:    Michael Markman
DEPARTMENT:    23
LOCATION:    Rene C. Davidson Courthouse
    Administration Building, 1221 Oak Street, Oakland, CA 94612
PHONE NUMBER:    (510) 267-6939
FAX NUMBER:
EMAIL ADDRESS:    Dept23@alameda.courts.ca.gov

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 101.3)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate).  Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available.  For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

**ASSIGNED FOR ALL PURPOSES TO**
JUDGE <u>Michael Markman</u>
DEPARTMENT <u>23</u>

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference.  The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days."   The court's website contains this form and other ADR information.  If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

A. Tumonong, Deputy Clerk

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/05/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _A. Tumonong_ Deputy |
| PLAINTIFF/PETITIONER:<br>JAIME GUZMAN individually, and on behalf of all others similarly situated, | |
| DEFENDANT/RESPONDENT:<br>WALMART, INC. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>24CV068489 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Craig W. Straub
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/05/2024                    By:

A. Tumonong, Deputy Clerk

**CERTIFICATE OF MAILING**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/05/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>A. Tumonong |
| PLAINTIFF/PETITIONER:<br>JAIME GUZMAN individually, and on behalf of all others similarly situated, | |
| DEFENDANT/RESPONDENT:<br>WALMART, INC. | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV068489 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Notice of Case Reassignment (Civil), Minute Order, Notice of Case Reassignment (Civil), Notice of Case Management Conference, Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, Summons on Complaint, Complaint entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Craig W. Straub
craig@crosnerlegal.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/05/2024                By:

A. Tumonong, Deputy Clerk

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/11/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>A. Tumonong |
| PLAINTIFF/PETITIONER:<br>JAIME GUZMAN individually, and on behalf of all others similarly situated, | |
| DEFENDANT/RESPONDENT:<br>WALMART, INC. | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV068489 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Notice of Case Reassignment (Civil) entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Craig W. Straub
craig@crosnerlegal.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/11/2024                    By:

A. Tumonong, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA

FILED
ALAMEDA COUNTY

APR 05 2024

CLERK OF THE SUPERIOR COURT
By_____
                                    Deputy

GUZMAN,

              Plaintiffs

WALMART INC.,

              Defendants

Case No.  24CV068489

INITIAL CASE MANAGEMENT
ORDER

ASSIGNED FOR ALL PRE-TRIAL
PURPOSES TO:
JUDGE MICHAEL MARKMAN
DEPARTMENT 23

The following order shall apply to all parties in this action:

<u>CASE MANAGEMENT CONFERENCES</u>

At Case Management Conferences (CMCs), the Court will address discovery
issues, schedules, and other subjects pursuant to CRC 3.750.  Counsel attending CMCs
must be thoroughly familiar with the case.  The Court permits remote CMC appearances
by video conference.  Parties are to meet and confer in advance of the CMC regarding the
form of their appearance.  The Court prefers all speaking participants for all parties to
participate from the same platform, i.e., all speaking participants should be prepared to
attend either by videoconference or in person.  (The Court does not have a preference re
the manner of attendance of non-speaking participants.)

At the Initial CMC, the parties must be prepared to discuss the nature of the case,
both factually and legally, as well as the projected management of the case at each stage,
including the prospective use of lead counsel and a common complaint.  The CMC is not

1

a perfunctory hearing.  The primary objective of the CMC is to develop a comprehensive plan for a just and efficient determination of the litigation.

Courtesy copies of all CMC statements must be emailed to dept23@alameda.courts.ca.gov and must also be delivered in hard copy directly to Dept. 23 if they exceed five pages.  The filing and delivery date is not later than fifteen (15) days before the CMC unless otherwise directed.

The Parties shall prepare and file a joint CMC statement, prepared in narrative form (not using Form CM-110), after counsel have met and conferred in person or via telephone or videoconference as required by CRC 3.724.  Written or emailed exchanges do not meet the Court's good faith meet and confer requirements.

Initial CMC statements must address the following issues when applicable:

A.  A brief factual summary to assist the Court in understanding the background of the case, a statement of the issues presented, including each theory of liability and defense and a summary of the facts supporting each position taken, and the relief sought, including an estimate of damages.

B.  The number of parties and their posture, including a proposed structure of representation (e.g., liaison/lead counsel or by committee);

C.  Deadlines and limits on joinder of parties and amended or additional pleadings;

D.  Class discovery and class certification, if applicable;

E.  A proposed schedule for the conduct of the litigation including, but not limited to a discovery plan, a plan for hearing remaining law and motion, proposed mediation dates, projected dates for filing motions for class certification (if applicable), and trial;

F.  An identification of all potential evidentiary issues involving confidentiality or protected evidence and/or agreement re a related protective order;

G.  A detailed description of the procedural posture of the case, describing any outstanding procedural problems, including, but not limited to:

(1)  unserved parties and the reasons for the failure to serve;

(2)  unserved and/or unfiled cross-complaints;

(3)  related actions pending in any jurisdiction and the potential for coordination or consolidation;

(4)  any possible jurisdictional or venue issues that may arise;

(5)  the status of discovery, including a description of all anticipated discovery and incomplete or disputed discovery issues;

(6)  unresolved law and motion matters;

(7)  requests for, or opposition to, any ADR proceedings, including but not limited to mediation, judicial or contractual arbitration;

(8)  severance or bifurcation of issues for trial; and

(9)  calendar conflicts for any attorney, witness, or party, and any other matter which may affect the setting of a trial date.

H.  Counsel may make suggestions for streamlining the litigation, including, but not limited to, a master file system, common complaints and/or answers, designation of lead counsel [for plaintiff(s) and/or defendant(s)] to streamline service of process and/or management of discovery, the use of e-filing, and the use of a web-page maintained by lead counsel for the purpose of posting the litigation schedule and agenda. Counsel may also address ways of structuring the trial of the action such as bifurcation, severance, bell-

weather trials, use of special masters, use of expedited jury procedures and/or waiver of jury.

I. If the action is a Judicial Council Coordinated Proceeding (JCCP), the initial CMC statement must also include a list of cases that the parties agree should be coordinated within the JCCP. The list may be supplemented in later CMC statements as additional cases are added to the JCCP through stipulation or otherwise. (CRC 3.544.)

Parties are advised to check the Court's register of actions before appearing at any CMC, including the Initial Case Management Conference, to determine if the Court has issued an order, or a tentative case management order. The Court will endeavor to issue tentative case management orders (TCMOs) at least two days before the CMC. If a TCMO is published, it will become the order of the Court unless counsel or self-represented party notifies the Court and opposing counsel/self-represented party by email and through eCourt prior to 3:00 p.m. the court day before the CMC that they wish to appear at the CMC to discuss or contest some aspect of the order. Parties may not contest a TCMO until they have met and conferred in good faith and in person (or via video or telephone conference) concerning the potential areas of dispute or discussion. If subsequent agreement is not reached, the request to appear sent to the Court must, in a non-argumentative manner, succinctly detail the meet and confer efforts, the topics the parties wish to discuss, and the parties' respective positions. (Please note that the Tentative Rulings posted on the website are for tentative rulings on law and motion matters and will not display TCMOs. The TCMOs are found in the Register of Action.) Department 23 may be reached at Dept23@alameda.courts.ca.gov.

## MOTIONS FOR CLASS CERTIFICATION

Plaintiffs are expected to file their motion for class certification no later than 13 months after filing the complaint. Parties are to include related updates in their initial and supplemental CMC statements.

## NOTICE OF FEE CHANGES - JURY TRIAL FEE

The advance jury fee is fixed at $150.00 and is not refundable. With certain exceptions, the jury trial fee is due on or before the date scheduled for the initial case management conference. (C.C.P. § 631(b).)

## DISCOVERY

Discovery Conference: Motions related to discovery (i.e. motions to compel, protective orders etc.) may not be filed without leave of the Court until after an informal discovery conference pursuant to revised Local Rule 3.31 (amended effective January 1, 2023). A party may request an IDC by joint email to dept23@alameda.courts.ca.gov. Any IDC request must include a succinct, non-argumentative narration of the parties' good faith meet and confer efforts (in person, or via video or telephone conference), and the remaining areas of disagreement. The IDC is not a pro forma step before a motion. Parties are to continue their in person meet and confer efforts after the submission of their IDC statements. Parties are to email the Court with their request to withdraw the IDC or narrow the issues to be discussed prior to 9:00 a.m. on the date of the IDC.

## EMAILS TO COURT

Emails to the Court are not part of the Court record in this case and may be deleted without notice. Email is not a substitute for required filings. Any emails should be copied to all counsel. The Department 23 email may only be used for the following

purposes: to seek a reservation to schedule a proceeding on the Court's calendar, to give

notice that a settlement has been reached, to request that a motion be withdrawn, to

request an IDC (and transmit IDC statements), to notify the Court of emergency

scheduling issues (i.e. running late to a hearing), to contest a tentative ruling, to reply to

an inquiry from the clerk or research attorney of Department 23, to communicate with the

courtroom clerk regarding department 23 procedures (that are not otherwise addressed in

this order, the local rules, or on the Department or Court web site), to deliver courtesy

copies fewer than 5 pages in length (including all attachments), or to communicate re

other matters that the Court has expressly authorized in this case.

　　　If any email communications to the Court include ex parte communications,

attempt to argue issues not properly noticed, or are rude or unprofessional, then the clerk

will not pass on the communication to the Court, and it will not be considered.  However,

improper communications may be the subject of sanctions ordered sua sponte by the

Court, or after consideration of a noticed motion.  The Court may also sua sponte file in

the register of action any email communications transmitted to the Court by a party or

counsel.

<u>PRO HAC VICE PROCESS</u>

　　　Applications for Pro Hac Vice must be submitted by noticed motion on regular

time, or, if it is a time sensitive matter, a request for an order shortening time must be

submitted.  Applications will not be considered on an ex parte basis.  (CRC 9.40.)

<u>NOTICE</u>

　　　Parties are advised that CASE MANAGEMENT ORDERS, including trial setting

orders, and FINAL RULINGS ON LAW AND MOTION that are issued by Dept. 23 will

be published in the Court's website in the Register of Action for this case. The clerk of

the Court WILL NOT serve each party a copy of future orders. Unless otherwise

ordered, counsel must obtain copies of all future orders from the Register of Action in

this case.

<u>SERVICE OF THIS ORDER</u>

Counsel for plaintiff(s) has a continuing obligation to serve a copy of this order on

newly joined parties not listed on the proof of service of this order and file proof of

service. Each party defendant joining any third-party cross-defendant shall have a

continuing duty to serve a copy of this order on newly joined cross-defendants and to file

proof of service. The Court directs the clerk to serve a copy of this CASE

MANAGEMENT ORDER upon counsel for Plaintiff(s).


DATED: April 5, 2024


_____

**Michael Markman / Judge**
MICHAEL MARKMAN, JUDGE

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/16/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>A. Tumonong |
| PLAINTIFF/PETITIONER:<br>JAIME GUZMAN individually, and on behalf of all others similarly situated, | |
| DEFENDANT/RESPONDENT:<br>WALMART, INC. | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV068489 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Initial Case Management Order entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Craig W. Straub
craig@crosnerlegal.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/16/2024                          By:

A. Tumonong, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse, Department 23

## JUDICIAL OFFICER: HONORABLE MICHAEL MARKMAN

Courtroom Clerk: Ana Liza Tumonong                                   CSR: None

---

**24CV068489**                                                April 5, 2024
                                                               11:44 AM

**GUZMAN INDIVIDUALLY, AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,
  vs
WALMART, INC.**

---

**MINUTES**

**NATURE OF PROCEEDINGS: Court Order Complex Determination**

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

This case is hereby determined to be complex within the meaning of Rule 3.400 of the California Rules of Court.

The case is ordered reassigned to Judge Michael Markman in Department 23 at the Rene C. Davidson Courthouse for all further proceedings and for all purposes.

The case is ordered stayed until the Initial Status Conference date. Notice of Initial Status Conference is to be given by the Clerk in Department 23. No responsive pleadings may be filed until further order of the Court. Parties may file a Notice of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a general appearance, and shall not waive any substantive or procedural challenge to the complaint. Nothing herein stays the time for filing Affidavit of Prejudice pursuant to Code of Civil Procedure section 170.6.

Pursuant to Government Code section 70616 subdivisions (a) and (b), each party is ordered to pay $1,000.00 for complex fees, payable to Alameda County Superior Court, within ten (10) calendar days of service of this order.

Any party objecting to the complex designation must file an objection with proof of service in Department 23 within ten (10) days of service of this minute order. Any response to the objection must be filed in Department 23 within seven (7) days of service of the objection. This Court will make its ruling on the submitted pleadings.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

The Complex Determination Hearing scheduled for 04/19/2024 is vacated .

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

By:     A. Tumorong, Deputy Clerk

Minutes of: 04/05/2024

Entered on: 04/05/2024

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
### Rene C. Davidson Courthouse

| | |
|---|---|
| JAIME GUZMAN individually, and on behalf of all others similarly situated, <br>         Plaintiff/Petitioner(s) <br>         vs. <br> WALMART, INC. <br>         Defendant/Respondent (s) | No.     24CV068489 <br><br> Date:   04/05/2024 <br> Time:  11:46 AM <br> Dept:  23 <br> Judge:  Michael Markman <br><br> ORDER Complex Determination |

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at http://www.alameda.courts.ca.gov/domainweb/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Rene C. Davidson Courthouse

Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

This case is hereby determined to be complex within the meaning of Rule 3.400 of the California Rules of Court.

The case is ordered reassigned to Judge Michael Markman in Department 23 at the Rene C. Davidson Courthouse for all further proceedings and for all purposes.

The case is ordered stayed until the Initial Status Conference date. Notice of Initial Status Conference is to be given by the Clerk in Department 23. No responsive pleadings may be filed until further order of the Court. Parties may file a Notice of Appearance in lieu of an Answer or other responsive pleading. The filing of a Notice of Appearance shall not constitute a general appearance, and shall not waive any substantive or procedural challenge to the complaint. Nothing herein stays the time for filing Affidavit of Prejudice pursuant to Code of Civil Procedure section 170.6.

Pursuant to Government Code section 70616 subdivisions (a) and (b), each party is ordered to pay $1,000.00 for complex fees, payable to Alameda County Superior Court, within ten (10) calendar days of service of this order.

Any party objecting to the complex designation must file an objection with proof of service in Department 23 within ten (10) days of service of this minute order. Any response to the objection must be filed in Department 23 within seven (7) days of service of the objection. This Court will make its ruling on the submitted pleadings.

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

The Complex Determination Hearing scheduled for 04/19/2024 is vacated .

Clerk is directed to serve copies of this order, with proof of service, to counsel and to self-represented parties of record.

Dated :  04/05/2024

---

ORDER Complex Determination                                             Page 2 of 3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
Rene C. Davidson Courthouse

Michael Markman / Judge

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/11/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>A. Tumonong |
| PLAINTIFF/PETITIONER:<br>JAIME GUZMAN individually, and on behalf of all others similarly situated, | |
| DEFENDANT/RESPONDENT:<br>WALMART, INC. | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>24CV068489 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Order Complex Determination entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Craig W. Straub
craig@crosnerlegal.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/11/2024                    By:

A. Tumonong, Deputy Clerk

# EXHIBIT 4

| Attorney or Party without Attorney:<br>CROSNER LEGAL, P.C.<br>9440 Santa Monica Blvd Suite 301<br>Beverly Hills, CA 90210<br>Telephone No: 310-496-4818<br><br>Attorney For: | | For Court Use Only |
|---|---|---|
| | Ref. No. or File No.:<br>01338 | **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of Alameda<br>04/12/2024<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ L. Bun _____ Deputy |
| Insert name of Court, and Judicial District and Branch Court:<br>SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ALAMEDA | | |
| Plaintiff: JAIMÉ GUZMÁN individually, and on behalf of all others similarly situated<br>Defendant: WALMART, INC. | | |

| PROOF OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>24CV068489 |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the Notice of Case Reassignment; Minute Order; Order Complex Determination

3.   *a.*   *Party served:*   WALMART, INC.
    *b.*   *Person served:*   Diana Ruiz, CT Corporation System, Agent for Service of Process

4. *Address where the party was served:*   330 North Brand Boulevard, Suite 700, Glendale, CA 91203

5. *I served the party:*
  a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Thu, Apr 11 2024 (2) at: 12:40 PM

<div align="center">Recoverable cost Per CCP 1033.5(a)(4)(B)</div>

6. *Person Who Served Papers:*
  a. Douglas Forrest (5141, Los Angeles)     **d.** *The Fee for Service was:*
  **b. FIRST LEGAL**     **e.** I am: A Registered California Process Server
    1517 W. Beverly Blvd.
    LOS ANGELES, CA 90026
  c. (213) 250-1111

7. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

                                  04/11/2024
                                 *(Date)*                             *(Signature)*



Judicial Council Form               **PROOF OF**                        *10848033*
Rule 2.150.(a)&(b) Rev January 1, 2007     **SERVICE**                        *(5688776)*

# EXHIBIT 5

 Superior Court of Alameda County Public Portal

**24CV068489** GUZMAN INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SI...
**Civil Unlimited** (Fraud (no contract))

Rene C. Davidson Courthouse / DEPT 23 - HON. Michael Markman

Filed: 03/20/2024

Next Hearing: 07/18/2024 Initial Case Management Conference

Upload Document

Document Download

## Case Summary

Register of Actions    Participants    Future Hearings

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 03/20/2024 | Complaint<br>Filed by: JAIME GUZMAN individually, and on behalf of all others similarly situated, (Plaintiff)<br>As to: WALMART, INC. (Defendant) | Document | ⬇ |
| 03/20/2024 | Summons on Complaint<br>Issued and Filed by: JAIME GUZMAN individually, and on behalf of all others similarly situated, (Plaintiff)<br>As to: WALMART, INC. (Defendant) | Document | ⬇ |
| 03/20/2024 | Civil Case Cover Sheet Addendum<br>Filed by: JAIME GUZMAN individually, and on behalf of all others similarly situated, (Plaintiff)<br>As to: WALMART, INC. (Defendant) | Document | ⬇ |
| 03/20/2024 | Civil Case Cover Sheet<br>Filed by: JAIME GUZMAN individually, and on behalf of all others similarly situated, (Plaintiff)<br>As to: WALMART, INC. (Defendant) | Document | ⬇ |
| 03/20/2024 | Notice of Case Management Conference<br>Filed by: Clerk | Document | ⬇ |
| 03/20/2024 | Complex Determination Hearing scheduled for 04/19/2024 at 09:30 AM in Rene C. Davidson Courthouse at Department 23 | Event | |
| 03/20/2024 | Initial Case Management Conference scheduled for 07/18/2024 at 08:30 AM in Rene C. Davidson Courthouse at Department 23 | Event | |
| 03/20/2024 | The case is placed in special status of: Class Action | Case | |
| 03/20/2024 | The case is placed in special status of: Provisionally Complex – Case Type | Case | |
| 03/20/2024 | Case assigned to Hon. Tara Desautels in Department 23 Rene C. Davidson Courthouse | Assignment | |
| 03/22/2024 | Proof of Personal Service<br>Filed by: JAIME GUZMAN individually, and on behalf of all others similarly situated, (Plaintiff)<br>As to: WALMART, INC. (Defendant)<br>Service Cost: 119.00<br>Service Date: 03/21/2024<br>Service Cost Waived: No | Document | ⬇ |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 03/27/2024 | Notice of Case Reassignment (Civil)<br>Filed by: Clerk | Document | ⬇ |
| 03/27/2024 | Case reassigned to Rene C. Davidson Courthouse in Department 23 - Hon. Michael Markman<br>Reason: Inventory Transfer | Assignment | |
| 04/04/2024 | Challenge To Judicial Officer - Peremptory (170.6)<br>Filed by: JAIME GUZMAN individually, and on behalf of all others similarly situated, (Plaintiff) | Document | ⬇ |
| 04/04/2024 | Updated -- Challenge To Judicial Officer - Peremptory (170.6):<br>Result: Denied<br>Result Date: 04/12/2024 | Document | ⬇ |
| 04/05/2024 | Notice of Case Reassignment (Civil)<br>Filed by: Clerk | Document | ⬇ |
| 04/05/2024 | Case reassigned to Rene C. Davidson Courthouse in Department 23 - Hon. Michael Markman<br>Reason: Deemed Complex (Non-Class Action) | Assignment | |
| 04/05/2024 | The case is placed in special status of: Deemed Complex | Case | |
| 04/05/2024 | The case is placed in special status of: Stay - Deemed Complex | Case | |
| 04/05/2024 | Initial Case Management Order<br>Filed by: Clerk | Document | ⬇ |
| 04/05/2024 | Minute Order (Court Order Complex Determination) | Minute Order | ⬇ |
| 04/05/2024 | Order Complex Determination<br>Signed and Filed by: Court | Document | ⬇ |
| 04/05/2024 | Complex Determination Hearing scheduled for 04/19/2024 at 09:30 AM in Rene C. Davidson Courthouse at Department 23 Not Held - Taken Off Calendar by Court on 04/05/2024 | Event | |
| 04/05/2024 | The case is removed from the special status of: Provisionally Complex – Case Type | Case | |

| Date | Message | Category | Download |
|------|---------|----------|----------|
| 04/12/2024 | Proof of Personal Service<br>Filed by: JAIME GUZMAN individually, and on behalf of all others similarly situated, (Plaintiff)<br>As to: WALMART, INC. (Defendant)<br>Service Date: 04/11/2024<br>Service Cost Waived: No | Document |  |

Terms of Service

Contact Us

About this Site

Copyright © Journal Technologies, USA. All rights reserved.